WILLIAM H. COCHRAN, as Administrator of WILLIAM H. COCHRAN, JR., Deceased, Respondent, *v.* MICHAEL SESS et al., Appellants, Impleaded with Another.

NEGLIGENCE — LIABILITY OF CONTRACTOR FOR INJURIES SUSTAINED BY EMPLOYEE OF ANOTHER CONTRACTOR. A contractor who has erected a stone wall upon a concrete foundation furnished by the owner of a building about to be erected, who neither knows nor has any reason to believe that the foundation was so insecure and defective as to render the building unsafe, is not liable to the employee of another contractor engaged in erecting a brick wall upon the stone wall for injuries sustained through the collapse of the former in the absence of evidence of any substantial defect in the latter, and a refusal to charge a request, to the effect that his liability was limited to defects in his own work, is reversible error.

*Cochran* v. *Sess,* 49 App. Div. 223, reversed.

(Argued October 23, 1901; decided November 1, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 23, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Peter Mitchell* for appellants. The defendants Sess had nothing to do with the things which the evidence tended to show caused the collapse of the buildings. (*Sutton* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 243; *Cornell* v. *B. & O. T. Co.,* 25 Wend. 365; *Morey* v. *Town of Newfane,* 8 Barb. 645; *Town of Galen* v. *C. & R. P. R. Co.,* 27 Barb. 543; *Radcliff* v. *Mayor, etc.,* 4 N. Y. 195; *Blackwell* v. *Wiswall,* 24 Barb. 355; Cooley on Torts [2d ed.], 804.) The court erred in refusing to charge that the defendants Sess had nothing to do with the concrete bottom put in by the owner and approved by the building department. (*Burke* v. *Ireland,* 26 App. Div. 487; *White* v. *Mayor, etc.,* 15 App. Div. 440.)

*Thaddeus D. Kenneson* for respondent. The exception of the appellants to the denial of their motion to dismiss the complaint was not well taken. (*Hopkins* v. *Clark*, 158 N. Y. 299; *Littlejohn* v. *Shaw*, 159 N. Y. 188; *Ryder* v. *Wombwell*, L. R. [4 Ex.] 32; *Bridges* v. *N. L. Ry. Co.*, L. R. [7 H. L.] 213; *Met. Ry. Co.* v. *Jackson*, 3 App. Cas. 193; *Ryan* v. *Manh. Ry. Co.*, 121 N. Y. 126; *Linkauf* v. *Lombard*, 137 N. Y. 417; *Hemmens* v. *Nelson*, 138 N. Y. 517; *Lane* v. *Town of Hancock*, 142 N. Y. 510.)

O'Brien, J. The plaintiff's son was killed on the 13th of May, 1898, while engaged, as a workman, in the erection of a building in the city of New York. This action was brought by the plaintiff as the personal representative of the decedent to recover damages under the statute. The owner of the building and a firm of contractors were made defendants, and it is charged that the death was the result of their negligence. The owner did not defend and the issues in the case were formed by the answer of the contractors. The plaintiff had a verdict, and the judgment entered thereon has been affirmed at the Appellate Division by a divided court.

The defendants who bring this appeal contracted with the owner to construct only the stone foundation of the building, the upper walls of which were of brick. The brick work was in charge of another contractor, in whose service the decedent was at the time of the accident. There was, therefore, no relation of master and servant between the defendants and the decedent. He was the servant of the parties who had contracted to build the walls above the stone foundation.

On the 13th of May, 1898, when the workmen were engaged in laying the brick and constructing the fifth story of the building, the rear walls collapsed and fell, and the plaintiff's intestate sustained injuries resulting in his death. The only way that the defendants have been connected with the accident is by their contract with the owner, which is in writing and appears in the record. It bears date on the 25th of March, 1898, and embodies the agreement of the defendants " to do

all the stone work for laying the foundations of the building to be erected on the south side of East 116th street in the city of New York," according to the plans and specifications of the architect, in the best workmanlike manner, to the satisfaction of the owner. The case, in its general aspect, is undoubtedly a hard one and stimulates the mind to search for some principle of redress for the loss and suffering of the plaintiff resulting from the death of his son. As the learned trial court said, the young man lost his life without any fault of his own, but through the fault of some one else, and he expressed the general and popular feeling very accurately when he said that some one ought to answer for the young man's life. But it is manifest that the defendants cannot be held liable for the result of the accident, unless some clear and definite legal principle can be found to justify such a conclusion. It would be palpably unjust to subject the defendants to damages upon some vague and indefinite theory of responsibility that the jury might evolve from their own sense of justice. If the defendants are liable at all their liability must rest upon some definite rule of law.

It is clear that there was no contractual duty or liability resting upon the defendants. They made no contract, express or implied, with the deceased or with the public. Their contract was with the owner of the land, and for any breach of it they are liable to him alone. Neither the plaintiff nor the deceased were parties to this contract or privies thereto. It was not made for their benefit, and, hence, the action cannot rest upon the theory that the defendants failed to perform the contract that they made with the owner of the land to build the foundation wall. (*Reynolds* v. *Van Beuren*, 155 N. Y. 120.) What the defendants agreed to do was to build a stone foundation wall according to the plans and specifications of the architect and to the satisfaction of the owner. It is difficult to find in the record any distinct allegation or specific proof that the defendants failed to perform this agreement. There is some proof in the case that some of the stones and mortar used in the walls were not suitable for the purpose,

but it does not appear that either the architect or the owner ever found any fault with the manner of performance. The decision upon the appeal, affirming the judgment, was made by a divided court, and, hence, the question is presented in this court whether the verdict was supported by any evidence whatever. It is, therefore, necessary to inquire and ascertain the principle upon which the defendants' responsibility must rest.

They are not liable, as we have seen, upon any contractual obligation or duty. The obligation that they were under to the deceased or the plaintiff was not different from that which they owed to the public at large, or to any other person who was lawfully in or about the building when it collapsed. The plaintiff was, therefore, bound to show that there was some defect in the defendants' work, which, as reasonably prudent men, they knew or should have known was of such a character as to render the structure a menace or danger to human life, or render it unsafe for any one engaged in or about the building. Any one who participates in the construction of any structure which is obviously dangerous to human life is a party to the creation of a nuisance, and engaged in an active wrong for the consequences of which he may be subjected to pecuniary responsibility. It is upon this theory, and this theory alone, as it seems to us, that the defendants must be held responsible.

They contracted and undertook to build the stone foundation upon which the superstructure of brick was to rest. They did not participate in any other respect in the construction of the building. It appears that the owner was to furnish the bottom upon which the stone wall that the defendants agreed to construct was to be laid. In the front of the building this bottom consisted of solid rock. The rear wall was to be laid upon a concrete bottom embedded in the earth and to be furnished to the defendants by the owner. The circumstances under which the defendants commenced the work of laying the wall appear in the case without any dispute: They applied to the building department in order to ascertain whether the

concrete bottom had been inspected and was considered a safe foundation for the building. The inspector of that department assured them that he had inspected it and found it safe and in compliance with the rules and regulations of the department. Upon these assurances the defendants commenced to lay the wall and completed their contract. The contractor who was to erect the walls followed and the building progressed until its walls were nearly finished, and then the rear wall fell resulting in the accident described. After the collapse some examination was made in order to ascertain the cause. The foundation walls of stone which the defendants had constructed remained intact. To all appearances they were not disturbed, except so far as the debris from the brick walls disturbed the upper parts or the sides of the stone work. It is quite obvious from the testimony appearing in the record that the collapse of the building was due to one of two causes. Either the brick walls were defective, or the concrete foundation settled or gave way, as in the case of *Burke* v. *Ireland* (166 N. Y. 305).

There is little, if any, force in the suggestion that the jury were at liberty to attribute the collapse of the building to some defect in the mortar or the binding stones used in the construction of a wall that remained practically intact. If the accident was due to some defect in the construction of the brick wall, clearly the defendants were not responsible for that, and so the trial judge instructed the jury. If the accident resulted from some defect in the concrete bottom furnished by the owner, the defendants were not at fault, unless it was shown that, notwithstanding the assurances of the building department, there was such an apparent defect as to render it obvious to the contractors that they were about to erect a building upon a dangerous and insecure foundation. Ordinarily they would be justified in relying upon the assurances of the building department, the architect and the owner himself that the bottom furnished for the stone wall was safe and suitable for the purpose. But it may be that, notwithstanding assurances of this kind, from so many responsible sources, yet

if it was obvious to a reasonably prudent man that a building of the character contemplated could not be erected upon such a foundation with safety to human life, the defendants might be held responsible. It would undoubtedly require very strong proof of knowledge or negligence on the part of the contractors to subject them to liability under such circum-stances. It is clear, however, that this action was not tried or submitted to the jury on any such theory. It does not appear that any such principle of liability was in the mind of the pleader when the complaint was framed, and we think that no proof was given at the trial which could justify the jury in finding that the defendants, when they commenced to lay the stone wall upon the concrete foundation, knew or had any reason to believe that it was so insecure and defective as to render the building that they were about to erect unsafe.

But if a most critical study of the testimony would develop any such proof, still we think the judgment must be reversed for an error in the charge. The trial judge instructed the jury that if they found as matter of fact that the building collapsed by reason of faulty construction, bad workmanship, or material in the walls above the basement, the defendants were entitled to a verdict, since they had nothing whatever to do with that portion of the structure. But if, on the other hand, they found that the building fell by reason of defects in the material or workmanship in the basement or cellar, and that such defects were the direct and proximate cause of the fall, they could find a verdict in favor of the plaintiff, and assess the damages in such sum as would pecuniarily compensate him for the loss by reason of his son's death. It will be seen that the learned judge did not discriminate between defects in the concrete bottom and defects in the stone wall. The jury were justified in finding from the general language of this charge that the defendants were liable for any defects in the foundation, whether that defect was in the concrete bottom or in the stone work. The defendants' counsel thereupon requested the court to charge that the work of the defend-ants consisted simply of building the cellar walls on the rock

foundation in front and on the concrete prepared by the owner in the rear; that they had nothing to do with the con-crete, and that there was no contradiction in the evidence in that respect. The learned trial judge replied to this request, that it was correct as between the owner and the contractor, but declined to charge the proposition as applying to the plaintiff. The defendants' counsel thereupon excepted.

It appears to us that no refined criticism of the language employed in this request can meet or answer the exception taken. The proposition was that the work of the defendants consisted simply of building the cellar walls on the rock foundation and concrete bottom, and clearly that was correct. It is said that that was a proposition of fact, but that criticism is scarcely correct. The learned judge had already instructed the jury in substance that the defendants' work ended with the stone work, and that there was no responsibility on their part for defects in the brick work. It was just as neces-sary to instruct the jury where the defendants' liability began as it was to instruct them where it ended, and this request was intended to call attention to the distinction between defects in the concrete bottom and defects in the stone work, and to correct the general language of the charge already given, which was in terms too broad. While it embodied a fact, it also embraced a legal proposition, since it required the court to define to the jury the legal limits of responsibility. After the refusal of the request the jury were justified in finding against the defendants, although they might have been satisfied that the accident resulted from a defect in the concrete foundation, which was not embraced in the defendants' work at all, and this too irrespective of any knowledge on their part as to the existence of this defect. It is scarcely possible that either the court or the jury failed to perceive the meaning of the proposition. It is obvious that the court fully appreciated its true scope and bearing, since he stated at once that it was correct when applied in a con-troversy between the defendants and the owner, but not cor-rect in its application to the case on trial. In any aspect of

the case it seems to us that the proposition was a reasonable one and applicable to the controversy about to be submitted to the jury, and that the refusal of the learned trial judge to charge it was error.

The judgment must, therefore, be reversed, and a new trial ordered, costs to abide the event.

PARKER, Ch. J., GRAY, HAIGHT, LANDON, CULLEN and WERNER, JJ., concur.

Judgment reversed, etc.