SCHUMACHER, Respondent, vs. CARL G. NEUMANN DREDGING & IMPROVEMENT COMPANY, imp., Appellant.

*November 10—December 8, 1931.*

For the appellant there were briefs by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *C. B. Bird*.

For the respondent there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter*.

FOWLER, J. The appellant claims that (1) There is no evidence to support the findings of the jury that (a) the deceased was not guilty of contributory negligence; (b) the deceased stepped into a hole; (c) stepping into a hole caused

the death of the deceased; (d) the defendant dug the hole into which it is claimed the deceased stepped. (2) The defendant was not under duty to guard the hole at the time of the death: (a) because of lapse of time and (b) because it was an independent contractor and had turned over its work to its principals who had accepted it. (3) The court erred: (a) in rejecting the expert evidence as to who dug the hole into which it is claimed the deceased stepped; (b) in refusing to permit a physician who attended the deceased prior to her death to testify as to what caused the condition for which he treated her.

(1) (a), (b), and (c) As to defendant's claim in these respects we will only say that we have carefully considered the evidence upon which the jury's findings were based and consider that their findings are sufficiently supported. No good purpose would be served by detailing this evidence.

(1) (d) Upon this point the evidence is not as clear and certain as we would wish, but we conclude that the finding must be upheld. It is quite clear that the hole into which the jury found the deceased stepped was dug by the defendant's dredge or by another dredge that had worked in the vicinity. Both dredges were pumping sand from the lake bed upon the shore for improvement of summer residence properties. While there is evidence pro and con as to whether the defendant's dredge pumped sand onto the adjacent shore out of the hole involved, it is admitted that while it was being moved it grounded near the location of this hole and at least pumped itself free. And while it would seem from the testimony of witnesses as to the construction and method of work of defendant's dredge that it could not have dug a hole of such dimensions and contour as that involved, it also appears quite as probable from the testimony as to the construction and method of work of the other dredge that that dredge could not have dug such a hole, and as first stated it is manifest that the hole was dug by one dredge or the other. While the other dredge was admittedly by mistake operating a few

minutes at about the location of this hole, and pumped a small amount of sand upon the adjacent shore, the shortness of the time it was so engaged and the small amount of sand thrown upon the shore by it seem to us to warrant the conclusion of the jury that it did not dig a hole so large and deep as the one involved. We cannot say that the jury were not warranted in concluding that there was stronger reason for believing that the defendant's dredge dug the hole than that the other dredge dug it, and in concluding from the whole evidence that the fact is as they determined it.

(2) (a) The hole was located about 400 feet from a public bathing beach, about 275 feet off shore, in shallow water in a sandy beach stretching in front of numerous summer cottages and commonly much used for bathing by occupants of the cottages and their guests. There is no claim that the findings of the jury that the hole was imminently dangerous and that injury from leaving the hole unguarded ought reasonably to have been anticipated are not supported. If a bather not knowing of its presence had been drowned from getting into the hole shortly after it was dug, there would be no doubt of the responsibility of the one who dug it and left it unguarded. But the plaintiff's wife got into the hole about six months after it was dug, after a winter had intervened during which, had barriers been placed when defendant left it, their destruction by pressure of ice would have been more or less probable. No questions were put or requested to be put to the jury covering the issues of fact to determine whether the lapse of time relieved the defendant from legal responsibility for absence of barriers at the time of the death. In the absence of such submissions and requests, the facts essential to relieve defendant on this ground must be taken as submitted to the trial court and decided in such way as to support the judgment. Sec. 270.28, Stats.

(2) (b) The general rule is that an independent contractor is relieved from responsibility to persons for injuries suffered by them after he has completed his work and it has

been accepted by his principal. 45 Corp. Jur. p. 884, and cases cited. There is an exception to this rule, however, where the work constitutes a nuisance. 45 Corp. Jur. p. 885, note 32; 32 L. R. A. n.s. 972, note; *O'Brien v. American B. Co.* 110 Minn. 364, 125 N. W. 1012.

A similar excavation situated in proximity to a bathing beach was held to be a nuisance in *Nemet v. Kenosha,* 169 Wis. 379, 172 N. W. 711. That the hole was a nuisance also follows from the finding of the jury that the hole without guards was imminently dangerous to life. And that the defendant was not absolved under the circumstances present by being an independent contractor seems to follow from the decision of this court in *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418, which holds that the defendant therein, although an independent contractor who had turned a staging over to the one for whom it was erected, was liable for injuries resulting to one from stepping on a defective plank thereon in absence of negligence of the injured person.

Counsel cites in support of his contention under this head *Nemet v. Kenosha, supra,* wherein a contractor of the city who had dug a trench for a water main in a lake bed, sued as a joint tortfeasor with the city for damages for a drowning of a bather in the trench, was granted a nonsuit by the circuit court. This ruling of the trial court was not brought up for review and this court did not consider it.

(3) (a) Mr. Muegge, an employee of the Railroad Commission who had examined all the dredge excavations along the lake frontage at the direction of the commission and who had watched the defendant's dredge in operation and been told by one of the owners of the other dredge how it operated, was called by the defense. He testified as to the contours and dimensions of the holes he had been told were dug by the different dredges, all without objection. He described the holes particularly as far as he was questioned concerning

them, and compared generally the two types dug by the two dredges. He was then asked in substance who dug a certain large hole and objection thereto was correctly sustained, apparently for the reasons that it was immaterial because not the hole into which the woman stepped and might have been answered wholly on hearsay. He then stated he had examined the hole into which the deceased stepped and compared it with other holes that he had been told were dredged by the different dredges and was asked: "From your examination what type of hole was it?" And the court stated, "I don't think that it is a subject of expert opinion evidence on his part." He then described with great particularity this hole. He then testified that Mr. Miller, the operator of the other dredge, told him what holes he had dredged and that he examined one hole that he saw the defendant's dredge digging. He was then asked whether from his examination of holes that he "found" to be Miller holes and holes that he "found" to be Neumann holes he could tell whose hole the one into which the deceased stepped was, and how it compared in size and nature with the holes he had "found" that the Miller dredge had dug. Objection to both of these questions was sustained. The reason for the ruling does not expressly appear but the ruling was proper, if for no other reason, because the answer to it would be based upon "hearsay." It also appears that the witness would have been permitted to describe particularly any hole or holes that he had examined and that after he had done so the jury would have been as competent to judge who dug any particular hole, what type it was, and to compare it with any other hole as was the witness. We do not discover that the court erred in sustaining the objections to the questions stated.

(3) (b) Dr. Cantwell, who had treated the deceased three or four months prior to her death, was called by plaintiff and testified that the cause of her death was drowning.

Others later testified that the cause was heart failure. On cross-examination appellant brought out the general condition of the woman before objection to the physician's testimony was made. He was then asked: "Q. What did you find was the cause of her. general condition?" Objection was made by plaintiff's counsel that the witness was questioned by him only as to the cause of her death and the doctor inquired whether his testimony as to her prior condition was not privileged. Another physician who had treated her prior to her death had been questioned by plaintiff's counsel fully as to her condition. It is claimed that this examination waived the privilege as to Dr. Cantwell's testimony. Whether it did or not the record discloses that Dr. Cantwell was examined by defendant's counsel quite fully as to her condition before any objection was made, and this when the only question—except preliminary ones—put to him by plaintiff's counsel was: "Could you tell the cause of her death?" and he answered: "My diagnosis was accidental drowning." The question objected to had no bearing on whether the woman died from drowning. It was not proper cross-examination and was objectionable on that ground if no other. Besides, the doctor had already testified on cross-examination as to the condition of her heart. The objection was properly sustained.

*By the Court.*—The judgment of the circuit court is affirmed.