EAST COAST FREIGHT LINES, INC., *v.*
CONSOLIDATED GAS, ELECTRIC LIGHT &
POWER CO. OF BALTIMORE

[No. 36, October Term, 1946.]

386

*Decided December 13, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Wendell D. Allen* and *Francis B. Burch* for the appellant.

*William Baxter* and *William T. Taymans* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant, defendant in four damage cases arising out of a collision between two motor vehicles, appeals from a judgment for costs entered in each case in favor of the appellee, a proposed third party defendant. One of the suits was brought in the Baltimore City Court and the other three were brought in the Superior Court of Baltimore City, all against the appellant alone. The appellant, after leave granted, filed a third party complaint in each case, to make the Mayor and City Council of Baltimore, hereinafter called the City, and the appellee, hereinafter called the Gas Company, third party defendants. Both of these third party defendants demurred to the complaint in each case. The demurrers of the City were overruled and it did not appeal. The demurrers of the Gas Company were sustained without leave to amend (one amendment had already been made) and judgments were entered in favor of the Gas Company for costs. The cases were separately appealed, but consolidated by agreement, and were heard together here, as the same questions were involved in all of them.

It appears from the record that on July 27, 1945, about one A. M., on a dark and rainy night, a tractor-trailer, owned and operated by a certain Schoblocher and leased by the appellant, was proceeding in an easterly direction on Wilkens Avenue, a public highway of the City of Baltimore, and approaching the intersection of that Avenue with Brunswick Street. At that intersection Wilkens Avenue ceases to be macadam or concrete across the entire width and begins to be divided by a six-foot grass plot placed in the middle of the highway and extending eastward for many blocks. Starting about three feet east from the west end of the grass plot is a line of 15-foot poles on which are electric lights. These poles are in the center of the grass plot. The light on the one nearest the west end was not lighted. Another tractor-trailer, owned by Willis and operated by a man named Lewis, was proceeding westerly along Wilkens Avenue, approaching the intersection. Upon reaching the

grass plot the left front wheel of Schoblocher's tractor hit the curbing around the plot. The tractor turned to its left, struck the lamp post, continued to its left over to the west-bound lane of Wilkens Avenue, and collided with the Lewis tractor. A fire resulted. Schoblocher and a man named Gretsinger, who was riding with him, were killed, Lewis died as a result of the accident, and a man named Gillikin, who was riding with Lewis was injured. The suits were brought by the widow and children of Lewis, by the widow and children of Gretsinger, by Willis for property damage to his truck, and by Gillikin for personal injuries. The question before us is whether the Gas Company is required to answer the allegations of the identical third party complaints filed against it in each of these cases. The answer to that question depends upon whether any actionable negligence is charged against the Gas Company.

Negligence "Necessarily involves the breach of some duty owed by the defendant to the plaintiff * * *." *Holler v. Lowery*, 175 Md. 149, at page 158, 200 A. 353, at page 357. The question before us, therefore, resolves itself into a consideration whether, under the facts and circumstances alleged in the third party complaints, the Gas Company owed any duty to the traveling public such as the original plaintiffs in these cases and the appellant, or others in like situation, and if it did, whether the allegations support a claim that it failed in the performance of that duty, and that such failure was the proximate cause of the accident involved in this case. As was said by this Court, speaking through Chief Judge McSherry, in the case of *West Virginia Central & P. R. Co. v. Fuller*, 96 Md. 652, at page 666, 54 A. 669, at page 671, 61 L.R.A. 574, "Of course there can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a

duty to the individual complaining, the observance of which duty would have averted or avoided the injury. This has been so often stated that it is not deemed necessary to elaborate it." See also *Birckhead v. Baltimore,* 174 Md. 32, 197 A. 615.

The third party complaints describe the accident as follows: "Shortly before the actual impact of the vehicles, the left front wheel of Schoblocher's tractor hit the elevated curbing of a grass plot about six feet wide, more or less, located in the middle of Wilkens Avenue, the physical layout of the grass plot being hereinafter more fully described, and Schoblocher's tractor thereupon turned to its left and a part of his tractor-trailer struck a metal lamp post in the middle of and near the west end of the grass plot and proceeded diagonally to its left in and upon and then partially over and to the left of the grass plot, and into and upon the westbound lane of Wilkens Avenue, and there collided with the oncoming tractor and trailer operated in a westerly direction by Lewis." It is urged by the appellee that this allegation not only does not show that the presence of the lamp post was the proximate cause of the accident, but on the contrary, indicates that the striking of the elevated curbing was such cause, because this is what deflected the Schoblocher tractor and caused it to turn to its left. A number of cases are cited for this conclusion, including *County Commissioners v. Collison,* 122 Md. 91, 89 A. 325; *Birckhead v. Baltimore, supra; Hagerstown v. Foltz,* 133 Md. 52, 104 A. 267, and *Parsons v. C. & P. Tel. Co.,* 181 Md. 502, 30 A. 2d 788. In the last case an operator of an automobile collided with a telephone pole along the State highway. The Telephone Company was sued, its demurrer to the declaration was sustained, and this action was affirmed by this Court. In the declaration in that case it was stated that the Telephone Company maintained its pole on the side of the road within a few feet of the traveled portion and in a ditch, and that the plaintiff's automobile went off the traveled road and down the abrupt side of the ditch, which guided the automobile into the pole.

This Court said that it was apparent that this condition of the highway was an independent factor which intervened as a superceding cause of the injuries complained of. We found that the direct and proximate cause of the injuries sustained was not the position of the pole, but was the condition of the ditch and roadside. That case is very closely analogous to the one before us.

In this oral argument counsel for appellant said that it was intended to allege (and he thought it was sufficiently alleged) that striking the pole further deflected the tractor-trailer to the left and caused the operator to lose control of it. And that this was the proximate cause of the accident. He asked, if the allegations were held insufficient to show that the pole was the proximate cause of the accident, that the Court would give appellant the opportunity to further amend its complaint to correct this defect if it existed. But we pass this request for the moment to consider the basis of the duty claimed to be owed by the appellee.

The complaint, after reciting that the City maintained a series of electric light poles about 15 feet high and about 130 feet apart in the center grass plot, one of them being about three feet from the west end thereof, and making the allegation that the City negligently failed to mark the beginning of the west end of the grass plot and the lamp post with warning signs, shields, lights, barriers and other devices or safeguards to warn eastbound traffic, and after reciting the inadequacy of the lights at the top of the poles to illuminate the hazards there existing and to give proper and sufficient notice, and after further alleging that at the time of the accident and for a number of hours prior thereto the City failed to maintain the electric lights and suffered them to remain out, stated the case against the Gas Company in the following words: "The Gas and Electric Company, by contract with the City, had undertaken for years before the time of the accident complained of to furnish electric current for said lights and to furnish inspectors to inspect the lights and to maintain the said

electric lights and their appurtenances and to make necessary repairs and replacements from time to time, and to replace lamp posts knocked down and broken, and to keep the lights burning at night, for the safety of those lawfully using the highway, but the Gas and Electric Company, after due and timely notice during the night of the accident, that the aforesaid lights were out, undertook to make the necessary repairs and replacements in a negligent and careless manner, in that it assigned an insufficient repair force to make repairs and replacements to said lights, thus resulting in unreasonable delay in completing the said repairs and replacements. The Gas and Electric Company for years prior to the accident had knowledge of the dangers incident to the maintenance of a pole at the west end of the grass plot, even with a light burning at the top thereof, without appropriate warning devices at or near the base thereof to warn eastbound traffic of the presence of said pole and of the dangerous and hazardous obstructions in the form of the grass plot and its elevated curbing and the metal pole there located. The Gas and Electric Company had repeatedly on numerous occasions prior to the accident replaced said pole with new poles at the same location as and when the pole was frequently hit and knocked down by the motoring public, said pole having been frequently struck and knocked down even when the lights were burning and when conditions of visibility were much more favorable to the motoring public than on the dark and rainy night when the accident complained of occurred. The Gas and Electric Company had warned the City of the dangers incident to the maintenance of a metal pole at the west end of the grass plot without proper and adequate warning devices. The Gas and Electric Company continuously for a long time prior to the accident negligently participated with the City in maintaining, reconstructing and continuing the presence of said dangerous obstruction and public hazard and nuisance, and repeatedly, for profit, replaced the pole at the same location from time to

time, well knowing the dangers incident thereto, but, nevertheless, continued in its positive and affirmative acts of misfeasance and negligence in perpetuating the dangerous condition, with full knowledge of the negligent failure on the part of the City to heed repeated warnings to establish effective, safe and adequate warning devices at or near or upon said pole and grass plot to warn eastbound traffic. The Gas and Electric Company owed a duty to the public to desist from the continued erection and maintenance of said metal pole creating in the manner as aforementioned a dangerous obstruction and public hazard and nuisance; but the Gas and Electric Company violated its said duty by continuing the maintenance of said dangerous obstruction and public hazard and nuisance."

These allegations embody two charges of failure of duty. The first is the delay in making the necessary repairs and replacement so that the light on the pole which was struck would be burning. The second is the participation of the Gas Company with the City in keeping a pole at the location three feet from the west end of the grass plot and replacing it there from time to time without any effective and safe warning devices. This last charge is the main basis of the appellant's claim. It contends that the pole was an obstruction of the highway, that it was a public nuisance, and that, as the Gas Company put up the pole (although it belonged to the City and its location was determined by the City) and as the Gas Company knew that as erected and maintained it was dangerous, the Gas Company owed a duty to the public, either to refuse to erect the pole, or to provide warning devices to notify travellers. The appellant says that if the Gas Company is an independent contractor nevertheless it is liable, even after the completion of the work, if the finished job creates a nuisance, and cites as authorities for this position, among others, *Wilson v. Peto,* 6 Moore 49, 14, R.C.L. 107, Sec. 42; *4 Dillon on Municipal Corporations,* (5th Ed.), Secs. 1723 and 1724; *Thompson v. Gibson,* 7 M. & W. 456 (1841);

*Maenner v. Carroll,* 46 Md. 193, at page 215; *Robbins v. Chicago City,* 4 Wall. 657, 18 L. Ed. 427; *Bass Canning Co. v. MacDougald Construction Co.,* 174 Ga. 222, 162 S. E. 687; *Dunlap v. Raleigh, etc., Co.,* 167 N. C. 669, 83 S. E. 703; *Ryan v. Feeney, etc., Co.,* 239 N. Y. 43, 145 N. E. 321, 41 A.L.R. 1; *Murray v. Arthur,* 98 Ill. App. 331; *Blendinger v. Souders,* 2 Monag., Pa. 48; *Cochran v. Sess,* 168 N. Y. 372, 61 N. E. 639; *Silvers v. Nerdlinger,* 30 Ind. 53; *Carson v. Blodgett Const. Co.,* 189 Mo. App. 120, 174 S. W. 447; *Pennsylvania Steel Co. v. Elmore, etc., Co.,* C. C., 175 F. 176; *Schumacher v. Carl G. Neumann, etc., Co.,* 206 Wis. 220, 239 N. W. 459; *Cordish v. Bloom,* 138 Md. 81, 113 A. 578; *Baltimore v. Thompson,* 171 Md. 460, 189 A. 822; *Cumberland v. Turney,* 177 Md. 297, 9 A. 2d 561.

Without discussing all these cases in detail (and they are not all in point), they seem to substantiate the general statement made by Judge Alvey in *Maenner v. Carroll,* 46 Md. 193. The facts of that case are not pertinent to the issue here, but the statement is as follows: "Now, it is certainly true, that every person who does or directs the doing of an act that will of necessity constitute or create a nuisance, is personally responsible for all the consequences resulting therefrom, whether such person be employer or contractor. *Wilson v. Peto,* 6 Moore 49."

In the case of *Robbins v. Chicago,* 4 Wall. 657, 18 L. Ed. 427, the suit was by the City which had paid damages to an injured pedestrian for re-imbursement by the owner of a building lot who had excavated an area in a sidewalk. The contractor who was still doing the work was not a party to the case. The Court held the owner liable because the excavation necessarily constituted an obstruction or defect in the street which rendered it dangerous as a way of travel unless properly guarded.

The case of *Bass Canning Co. v. MacDougald Construction Co. et al.,* 1932, 174 Ga. 222, 162 S. E. 687, was a suit against a construction company and the City for damage to property of the plaintiff in its warehouse

resulting from the inundation of the ground floor of the building by surface water from the streets. It appeared that the construction company was employed by the City to pave the street and construct a storm sewer and did so according to the plans adopted by the City, thereby raising the mouth of the sewer about four feet and causing the surface water to accumulate on the street. The Court held the City liable because its negligence or error of judgment resulted in the creation of a nuisance and said that the construction company was also necessarily liable as joint tortfeasor because it was not the adoption of the faulty plan, but the carrying it into execution that caused the damage. The fact that the construction company was an independent contractor afforded no reason why it should not be held responsible.

The case of *Dunlap v. Raleigh, etc., Railroad Co.*, 167 N. C. 669, 83 S. E. 703, 704, was an action by the plaintiff who fell into a railroad cut, 30 feet deep. The cut was on the right-of-way of the railroad company and the other defendant in the case did the excavation for bridge work under contract. The jury found for the plaintiff against both defendants and this was affirmed. The Court said "The defense of an independent contractor is not available, where the thing contracted to be done is 'necessarily attended with danger or will probably become a nuisance'." The work was not completed when the accident happened.

In the case of *Cochran v. Sess*, 168 N. Y. 372, 61 N. E. 639, 640, plaintiff's son was killed while building a brick wall on a building. The owner and the contractors who had built and completed the stone foundation upon which the brick wall was to be built were made defendants. The defendant contractors built the stone foundation wall according to the plans and specifications of the architect. The Court said they could only be held upon the theory that "Anyone who participates in the construction of any structure which is obviously dangerous to human life is a party to the creation of a nuisance, and engaged in an active wrong, for the consequences of

which he may be subjected to pecuniary responsibility." The judgment was reversed because of the failure of the Court to give an instruction asked for by the defendants to the effect that they did not do the concrete foundation which the Court said from the record was one of the two causes of the accident, the other being some defect in the brick wall with which the defendant also had nothing to do.

In the case of *Carson v. Blodgett Construction Co.*, 189 Mo. App. 120, 174 S. W. 447, the defendant was making an excavation for the basement of a building in Springfield, Missouri, under contract with the owner. The blasting was done by a sub-contractor. The plaintiff was injured driving along the public street. The contractors in that case were said to be in the same status as owners, as far as the sub-contractors were concerned, and it was held they are liable because the work was inherently dangerous.

In the case of *Pennsylvania Steel Co. v. Elmore, etc., Co.*, C. C., N. D. N. Y., 175 F. 176, 183, involving a construction of a bridge over the Potomac River at Williamsport, Maryland, the Elmore Co. agreed to construct piers for the bridge as sub-contractors for the general contractor. One of the piers was alleged to have been faultily constructed by the fraudulent mixing of improper concrete. The piers as thus constructed were turned over with latent defects in them. The plaintiff then placed a superstructure, tools and machinery upon the pier and the latter collapsed, whereupon the plaintiff sued the sub-contractor. The Court held the defendant liable, saying "The complaint states a good cause of action in either aspect; that is, as one to recover damages for a willful tort or wrong, or as an action to recover damages for negligence."

In the case of *Schumacher v. Carl G. Neumann Dredging etc. Co.*, 206 Wis. 220, 239 N. W. 459, plaintiff's wife was drowned when in bathing in front of plaintiff's premises because of stepping into a 10-foot hole which was dredged by defendant and negligently left unguarded.

The hole was in shallow water on sandy beach in front of numerous summer cottages much used for bathing by occupants. The Court cited the general rule that an independent contractor is relieved from responsibility to persons for injuries suffered by them after he has completed his work and it has been accepted by his principal, and also noted the exception where the work constitutes a nuisance.

In the case of *Cordish v. Bloom,* 138 Md. 81, 113 A. 578, a pedestrian caught his foot between the frame and the cellar door in the sidewalk, fell, and broke his leg. He sued the owner of the premises and the City. The Court held that there was enough evidence against both Cordish and the City to permit the case to go to the jury.

In the case of *Ryan v. Feeney etc. Building Co.,* 239 N. Y. 43, 145 N. E. 321, 322, 41 A.L.R. 1, the defendant building company constructed a building and a canopy according to the plans and specifications furnished by the United States Government. The canopy fell down and killed the plaintiff. The work was accepted by the Government in January, 1919. The fall occurred on March 29, 1919, at which time there had been a heavy fall of snow. The Court said "The fact that after the accident experts on examining the plans found the supports improper and insufficient was not enough to hold the defendant liable. The defects, if any, should have been so glaring and out of the ordinary as to bring home to the contractor that it was doing something which would be likely to cause injury. In this case it was justified in relying on the architect and the government engineers for the strength and angles of the braces or supporting rods."

We may, therefore, conclude that the weight of authority is that a contractor, even after he has completed his work, may be held liable in damages if such work is inherently dangerous and constitutes a public nuisance. It does not necessarily follow that the complaint here states a good cause of action. An electric light pole is not of itself a nuisance, although it may become one by

reason of its location. *Burley v. Annapolis,* 182 Md. 307, at page 312, 34 A. 2d 603. If it is located improperly, in such a way as to endanger traffic, the contractor may be liable. That was the case in *Phelps v. Howard County,* 117 Md. 175, 82 A. 1058, and *Earp v. Phelps,* 120 Md. 282. 87 A. 806. In those cases the telegraph company placed a pole in immediate proximity to the used portion of a public highway. The company had authority to place poles on the highway, but the location of the individual pole was left to it. But this Court has said in a number of cases that where competent municipal or public authority has fixed the location of obstructions, such obstructions are not of themselves nuisances and the contractor who places them in the designated positions is not responsible.

In the case of *Garrett v. Lake Roland El. Railway Co.,* 79 Md. 277, 29 A. 830, 833, 24 L.R.A. 396, appellant filed a bill of complaint restraining the construction of an abutment in the bed of North Street in Baltimore for the purpose of making an elevated structure bridging the Northern Central Railroad tracks. The structure was built on legislative authority. The Court, speaking through Chief Judge McSherry, said, "The abutment and elevated structure, having been built under legislative authority, are not a nuisance. *O'Brien v. Baltimore Belt R. Co.,* [74 Md. 363, 22 A. 141, 13 L.R.A. 126]. 'That cannot be a nuisance, such as to give a common-law right of action, which the law authorizes.' *Northern Transportation Co. v. Chicago,* [99 U. S. 635, 25 L. Ed. 336.] 'It may be stated, as a general rule, that whatever is authorized by statute, within the scope of legislative powers, is lawful, and therefore cannot be a nuisance.' *2 Wood, R. Law,* 970. The structure is therefore a lawful one."

In *Poole v. Falls Road Electric Ry. Co.,* 88 Md. 533, 41 A. 1069, 1072, a railway was being constructed on the highways of Baltimore City, which should be approved by the Mayor and City Council. An ordinance authorized it to extend its system along Union Avenue. The

appellant, property owner there, asked for an injunction to prevent this, and claimed, by reason of certain facts set out, the contemplated use to be a public nuisance. The Court said, "As to the other point raised by the appellant, it is sufficient to say that this court has more than once held that the construction of the railroad, being authorized by competent authority, cannot be treated as a public nuisance."

The case of *Meese v. Goodman,* 167 Md. 658, 176 A. 621, 98 A.L.R. 480, is for damages resulting from an automobile accident. The suit was brought against the City of Baltimore, the receivers of the United Railways and drivers of other cars. The suit against United Railways was because after the two automobiles collided, the one in which the plaintiff was riding collided with a trolley pole. The accident occurred on North Avenue bridge, the trolley pole was in the center, one of a line of seven, and it was claimed that this was an unreasonable and dangerous obstruction to traffic without any device for signalling or warning the public. The Court said that the case was brought in accordance with the opinion in the case of *Stern v. International Railway Co.,* 220 N. Y. 284, 115 N. E. 759, 2 A.L.R. 487. It differentiated from that case because the location of the trolley pole in the Stern case was fixed by the Railway Company. It said that the Stern case was like the case of *Phelps v. Howard County, supra,* and *Earp v. Phelps, supra,* where the accident was due to the negligent location of telegraph poles near the travelled way of a county road. In that case, also, the Telegraph Company determined where the poles were to be located. The poles in the case before the Court were located by virtue of an ordinance which stated that the Mayor and City Commissioner of Baltimore should determine the points. The Court quoted from *Garrett v. Lake Roland El. Railway Company, supra,* and *Poole v. Falls Road Electric Railway Co., supra,* to the effect that whatever was authorized by statute within the scope of legislative powers is lawful and, therefore, cannot be a nuisance.

The judgment against the receivers of the Railway Company was reversed without a new trial.

The case of *Green v. Baltimore,* 181 Md. 372, 30 A. 2d 261, 262, involves an accident occurring when an automobile collided with a pylon on North Avenue. The case had been taken from the jury below. The City and the Railway Company constructed the pylons and provided the safety zone, and thereafter they are in charge of the police department. The Court said, "They are obstructions in the streets, intentionally erected by the city * * * but their purpose is to promote, not hinder, the public safety. If we were to yield to the plaintiff's contention it would be to declare these safety zones, protected by pylons to be nuisances *per se,* but we are unwilling to do this." The Court affirmed the judgment against the plaintiff stating that if there was any negligence in the case it would be the negligence of the police department.

In the case of *Northern Transportation Co. v. Chicago,* 9 Otto 635, 25 L. Ed. 336, the Supreme Court had before it a case where the plaintiffs were the lessees of a lot and claimed that by the operations of the City in constructing a tunnel along the street and under the Chicago River, they were deprived of access to their premises during the prosecution of the work. The case was argued on the assumption that the erection of the cofferdam constituted a public nuisance. The Court said, "that cannot be a nuisance, such as to give common law right of action, which the law authorizes."

The City of Baltimore had authority (Code Pub. Local Laws, Art. 4, Sec. 6 (26) (a) to (d) (g) (h) (j) (m), Sec. 85 A (2), (5) to establish a grass plot in the center of the highway and to provide for electric lights to be placed on poles located within that grass plot. The location of the poles was determined not by the Gas Company, but by the City authorities. It is true, there is no ordinance or act of the legislature which fixes the location of the poles, as was the case in *Meese v. Goodman, supra.* Nevertheless, even in that case, the administrative authorities of the City determined the exact point

of location of each pole, although an ordinance required the poles to be in the center of the bridge. We see no distinction in a situation such as that, and the case before us where the poles are located according to the judgment of the City department having charge of such matters. In either case the poles are located by competent municipal authority and, therefore, are not nuisances *per se*.

The allegations of the complaint do not show that the electric light pole located off of the travelled portion of the highway and three feet inside of the grass plot in the center of that highway, of itself constituted such a dangerous instrumentality as to make the contractor who placed it there liable. If it was improperly placed (and as to this we express no opinion) the fault was that of the City which located it there. The fact that other accidents have happened at this place and poles, there prior to the present replacement, have been knocked down, is not sufficient to show that the pole itself is a nuisance. The pole could not be reached by a vehicle unless the latter went off of that portion of the highway reserved for travel, and on to the grass plot in the middle. The cause of the present accident or of the preceding accidents cannot be attributed to the pole alone, if at all. The absence of warning signs or lights is a matter entirely in the control of the City, and if such absence caused the present accident, it is something which the City alone, and not the Gas Company, could have remedied. The nuisance, if there was a nuisance, and the dangerous condition, if there was such a condition, was not due to the pole. It was due, if it existed, to the establishment of a grass plot in the center of the highway, without proper warning of its beginning to approaching travellers, and without proper lighting. To this condition the pole was only incidental. We do not think the Gas Company can be held liable for creating or maintaining a nuisance under the circumstances alleged, and we do not think that the amending of its complaint, as suggested by counsel, so as to show that the

pole deflected the tractor-trailer, would help its case in this respect.

The remaining question is the negligence charged against the Gas Company for failing to make the necessary repairs and replacements of the lighting system, with the result that there were no lights on the pole at the time of the accident. There is some doubt in the way the complaint is worded, whether the absence of these lights contributed to the accident, in view of the statement made that "said lights, even when burning, were inadequate and insufficient to give proper and sufficient notice and warning to the east bound travelling public of the presence of the dangerous and hazardous obstructions in the form of the said grass plot with its elevated curbing and lamp posts." We will assume, however, that it was intended to charge that the absence of lights was a contributing cause and, on that assumption, will discuss the appellant's claim.

The Gas Company is not charged with using its electric current in any dangerous manner or, by its use, creating any dangerous condition. What it is charged with is a non-performance of its contract with the City. For such non-performance the greater weight of authority is that it is liable only to the City and that it owes no duty to the general public for which it may be made responsible by an action in tort for negligence. In the case of *Consolidated Gas Company v. Connor*, 114 Md. 140, 78 A. 725, 729, 32 L.R.A., N. S., 809, the Gas Company was sued by several individuals who were injured by inhaling gas which escaped from the mains which at that time supplied the City gas street lighting system. The Court held that the Gas Company was responsible, because what it was guilty of was a misfeasance rather than a non-feasance. Speaking through Judge Urner, it said in carefully chosen words, "The distinction between these two classes of negligence has been frequently considered, and it is well settled that 'nonfeasance' is the nonperformance of a duty, for which the agent is liable only to his principal, while 'misfeasance' is the improper perform-

ance of a duty, for which the agent is liable to third persons injured by such negligence. If, for example, the gas company in this case had failed to supply gas to the city lamps in accordance with its contract, this would have been a nonfeasance, for which the company would have been responsible only to the city. But when, in carrying out the contract, it distributes the gas through defective pipes and thus permits it to escape into the streets and houses of the city, there is manifestly involved an affirmative element of negligence amounting to misfeasance, and for this the company is liable to anyone who may suffer in consequence."

This is the principle established and laid down in the Water Company cases. In *German Alliance Ins. Co. v. Home Water Supply*, 226 U. S. 220, 229, 33 S. Ct. 32, 57 L. Ed. 195, 42 L.R.A., N. S., 1000, a water company was under contract with the town of Spartanburg, S. C., to supply the city and its inhabitants with water suitable for fire, sanitary and domestic purposes. The city ordered the company to place hydrants with connecting pipes at a point about 200 feet from certain houses. The hydrants were not so placed, these houses caught fire, and it was alleged that had the hydrants been there, sufficient water would have been available to put out the fire. As it was, the houses were damaged, the insurance company paid the amount of the loss, which was considerable, and brought suit against the water company. The Supreme Court discussed the law on the subject, and said that the majority of the American courts hold that a taxpayer in such a case cannot sue *ex contractu* because he is not a party to the contract, and he cannot sue in tort, because the water company owes him no duty for the breach of which he can maintain an action *ex delicto*. This conclusion was adopted by the Court. In a later case, decided in 1928, the opinion in which was written by Justice Cardozo, then sitting as chief judge of the Court of Appeals of New York, a somewhat similar situation arose. This was *H. R. Moch Co. v. Rensselaer Water Company*, 247 N. Y. 160, 159 N. E. 896, 898, 62 A.L.R. 1199.

In that case the Water Company had a contract to furnish water to the City of Rensselaer, New York. It was alleged that a building caught fire adjacent to the plaintiff's warehouse. The Water Company was notified, but did not furnish sufficient pressure to enable the fire to be extinguished, although it had agreed with the City to furnish such pressure. As a result the plaintiff's warehouse was destroyed. The complaint was based upon three grounds, breach of contract, common law tort and breach of statutory duty. The Court said that to recover on the contract there must appear an intention that the promisor is to be answerable to individual members of the public, as well as to the City for any loss ensuing from the failure to fulfill the promise. The Court did not find this in the case before it, and on the strength of the German Alliance case, *supra,* and rulings in 26 other States, it held that the defendant was not liable to the plaintiff on its contract. The Court also denied the right of plaintiff to maintain the action as a common law tort, stating, "The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." The Court said that in the case before it, it was dealing with a mere negligent omission and that failure in such circumstances is at most the denial of a benefit. "It is not the commission of a wrong." The Court also denied the right of action as a breach of a statutory duty.

There is a case in the Court of Errors and Appeals of New Jersey, which is strikingly similar to the case at bar; that is, *Cochran v. Public Service Electric Co.,* 97 N. J. L., 480, 117 A. 620, 621. In that case the plaintiff was injured while driving a truck in Newark. The accident happened at about 4:30 A. M. on Clinton Avenue. There were, on that Avenue, safety aisles with upright standards for electric lights, which the defendant was under contract with the City to light. The lights were out. The Court denied liability, saying, "But, when the only complaint

is of a failure to perform a contract, as in the present case, the right of action is a right of the promisee under the contract unless it clearly appears that the parties intended that a third party should have a right of action on the contract. In determining whether it was meant to give a third party that right, an important consideration is that in a contract the parties select for themselves to whom they will incur liability; in a tort there is a general liability to any one to whom a duty may be owing who may be injured. Whether there is a breach of contract and a right of action in a third party is a question of intent."

The appellant contends that the application of these cases to the case at bar is prevented by two decisions of this Court. The first of these is *Walters v. Baltimore & Ohio Railroad Co.*, 120 Md. 644, 88 A. 47, 46 L.R.A., N. S., 1128. In that case, by a City ordinance, the railroad was authorized to abolish certain grade crossings in South Baltimore, and construct bridges across its tracks. One of these was at Hamburg Street, and the approaches to it were to be constructed upon a location to be fixed by the City of Baltimore, but the cost of building and paving them was to be met by the Railroad. After construction they were to be maintained by the City. The plaintiffs were the owners of a lot on Hamburg Street, and the construction of the approaches barred all ingress and egress to the building thereon, except by a ladder. The suit was against the Railroad and the City. The Court decided that the construction of the abutment or approach amounted to the taking of property without just compensation, that both defendants were joint tortfeasors and both liable to the plaintiff. In that case, however, the damage was caused by the erection of a structure, which was a positive act of commission and was not a mere non-performance of a contract duty. The other case was the case of *Washington B. & A. Electric Railroad Co. v. Cross*, 142 Md. 500, 121 A. 374, 376. In that case the plaintiff was driving across a bridge over the railroad tracks in Prince George's

County, and as a result of a board being out of place on the bridge, the horse was frightened, ran away, threw the plaintiff out and injured him. The suit was against the Railroad and the County Commissioners. The County Commissioners and the Railroad had an agreement by which the latter could construct its road over all public roads in Prince George's County, "Provided the said company shall construct and maintain crossings for said public roads at all points where said railroad crosses said roads." The Court affirmed the judgment as to the Railroad and reversed as to the County Commissioners because it was not shown that the latter had notice. The Railroad was held because of its regular and exclusive assumption of the duty of keeping the bridge in repair. We construe that case to be in line with the statement already quoted from *Cochran v. Public Service Electric Company, supra.* The contract made by the Railroad with the County Commissioners clearly included an intention that the Railroad should assume liability to the public for any failure to keep the bridge in repair. Its duty was exclusive, and from that must be inferred the intention of its responsibility. That is why this Court found the Railroad liable.

Our conclusion on this contention of appellant is that by the contract as set out in the complaint, there is indicated no intent that the Gas Company should become liable to the general public for its failure to carry out its agreement with the City. It, therefore, follows that it is not responsible to the plaintiffs in these cases, for its failure to keep the lights burning.

Since no actionable liability was alleged against the appellee in the appellant's third party complaints, the demurrers interposed on behalf of the Gas Company were properly sustained by the lower court. The judgment will be affirmed.

*Judgment affirmed with costs.*