FISHER and wife, Respondents, v. SIMON and wife, Appellants.

*November 27—December 29, 1961.*

For the appellants there was a brief and oral argument by *Randolph R. Conners* of Madison.

For the respondents there was a brief and oral argument by *Frank M. Coyne* and *James E. Quackenbush,* both of Madison.

CURRIE, J.   There is no issue before us with respect to whether a builder-vendor is liable to his vendee on implied warranty for latent defects in the building due to faulty construction.[1]   This is because there has been no appeal

---

[1] For an annotation on the question of a vendor's liability grounded on implied warranty, see 78 A. L. R. (2d) 446. In England it has been held that there is no implied warranty of safety in sales of real estate even though the vendor is also the builder of a house wherein a defective condition exists. *Otto v. Bolton* [1936] 2 K. B. 46, 1 All Eng. R. 960.

from that portion of the circuit court's order which sustained the demurrer to plaintiffs' second cause of action grounded on implied warranty. The sole issue on this appeal is whether a cause of action exists in favor of a vendee against the builder-vendor of a building for alleged negligence in construction resulting in a latent defect where the damages are limited to the expense of repairing the building.

Prosser states the elements requisite to a cause of action based on negligence as follows: (1) A legal duty to conform to a standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. Prosser, Law of Torts (2d ed.), p. 165, sec. 35. There can be no question but that, in their first cause of action, plaintiffs have alleged sufficiently elements (2), (3), and (4). They have also attempted to allege element (1), legal duty, by averring in paragraph 3 of the complaint:

"[T]hat in constructing said building for such purpose [that of sale], it was the duty of the defendants to use ordinary care in the construction of the same or the same degree of care used by similar building contractors in this vicinity in constructing houses for such purpose."

However, whether or not defendant builder-vendors were under a legal duty to plaintiff vendees to exercise ordinary care in construction presents an issue of law. This court pointed out in *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 183, 77 N. W. (2d) 397, that, whenever a court determines no duty was owed by the actor to the injured party, although the act complained of caused the injury, the court is making a policy determination. Under the allegations of the instant complaint, defendants' acts did cause the injury complained of. Therefore, whether defend-

ants should be relieved from liability, on the ground that they were under no duty to the plaintiffs to exercise due care in the construction of the house, presents an issue of policy which we must decide.

If defendants had constructed the instant house for plaintiffs under a contract directly entered into between the parties for such construction, we would have little difficulty in determining that the complaint stated a cause of action in tort. Such a situation confronted this court in *Colton v. Foulkes* (1951), 259 Wis. 142, 47 N. W. (2d) 901, except that the contract there was one for repair of a building instead of original construction. It was held that the complaint by the owner to recover for personal injuries stated a good cause of action against the contractor and his employees who had negligently performed the work. In support of this holding, the court cited 38 Am. Jur., Negligence, p. 661, sec. 20, which lays down the rule that accompanying every contract is a common-law duty to perform it with care and skill, and a failure to do so is a tort as well as a breach of contract. While it is not expressly stated in the *Colton Case,* that plaintiff owner had accepted the work from the contractor prior to the accident, the inference is that he had. The modern trend is to hold a building contractor liable for injuries to third persons arising from his negligent construction even though such injuries occur after completion of the work and its acceptance by the owner. Anno. 58 A. L. R. (2d) 865, 891, and cases cited therein. The rationale of such modern view is stated by the author of the annotation as follows (p. 891) :

"[T]hese cases openly take the view that the duty owed by a building or construction contractor to third persons, after he has completed and turned over his work to the owner, is the same as that owed by the manufacturer or vendor of chattels to persons not in privity of contract with him, as that duty was expressed in the *MacPherson Case.*

[*MacPherson v. Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050.]"

See also Prosser, Law of Torts (2d ed.), p. 519, sec. 85, and cases there listed in footnote 37; 2 Harper and James, Law of Torts, pp. 1556, 1557, sec. 28.10. Prosser cites *Colton v. Foulkes, supra,* as determining that a contractor is held to the standard of reasonable care for the protection of anyone who may foreseeably be endangered by his negligence, "even after acceptance of the work."

This court, in decisions prior to the *Colton Case,* had expressed the view that independent building contractors could not be held liable for negligence after completion and acceptance of the work. See *Schumacher v. Carl G. Neumann D. & I. Co.* (1931), 206 Wis. 220, 239 N. W. 459, and *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 29 N. W. (2d) 754. We can perceive no justifiable reason why a building contractor should be relieved from all liability to third persons for his negligence after completion and acceptance of the work by the owner where the defect is concealed or latent in character. Therefore, we adhere to our decision in the *Colton Case* and expressly overrule the statements in the *Schumacher* and *Delaney Cases* that an independent building contractor cannot be held liable for negligence after completion and acceptance of the work.

As we have seen, in *Colton v. Foulkes* the contractor was held liable to the owner after apparent completion and acceptance of the work, not to some third person. However, the complaint in that case carefully alleged that the defect which caused the injury was a concealed one. If such defect had been patent instead of latent, we are satisfied that the complaint would not have stated a cause of action. This is because, if the owner knowingly has accepted a defective performance by the contractor, he thereby is held to have waived the defect. *Guschl v. Schmidt* (1954), 266 Wis.

410, 63 N. W. (2d) 759. While in the latter case the question was raised by counterclaim of the owners sounding in contract and not tort, the same principle is applicable.

In *Colbert v. Holland Furnace Co.* (1928), 333 Ill. 78, 164 N. E. 162, 60 A. L. R. 353, defendant had installed a furnace in a home and the owner's wife was injured as a result of a defective cold-air grating in the kitchen floor giving way. Such defective condition was hidden from ordinary observation. The Illinois court held that where the defective condition is latent, the owner who accepts the installation is not chargeable with knowledge of such latent defect, and recovery in tort was permitted.

Thus far in this opinion we have been considering the liability of a building contractor to third persons and to the owner for negligence where the relief sought is damages for personal injuries. In the instant case, damages are not sought for personal injury but for repairs made necessary to a building constructed by defendants. We see no difference in principle whether the negligence results in personal injury or property damage.

In the instant case, defendants were the vendors to the plaintiffs as well as the builders of the house. Restatement, 2 Torts, pp. 961, 962, secs. 352, 353, sets forth the broad principle that a vendor is not liable for bodily harm caused to his vendee, or others, after the vendee has taken possession except where the vendor has concealed or failed to disclose a dangerous condition known to him, but not to the vendee, and the vendor has reason to believe that the vendee will not discover it. The cases cited and discussed in Annotation, "Liability of vendor or grantor of real estate for personal injury to purchaser or third person due to defective condition of premises," 8 A. L. R. (2d) 218, support this rule of the Restatement. However, the Restatement and the annotation fail to raise or discuss the question of whether

a builder-vendor should be subjected to a different rule of liability for negligence than vendors generally.

Defendants cite and rely on *Levy v. C. Young Construction Co.* (1957), 46 N. J. Super. 293, 134 Atl. (2d) 717.[2] That case held that a builder who sells a completed house is thereafter not liable to the purchaser for damage resulting from latent defects in absence of express warranties in the deed, or fraud. The defect was a section of sewer pipe, leading from the house to the sewer main in the street, which buckled and broke. The rationale for this holding appears from the following extract from the opinion (46 N. J. Super. at p. 297):

"As defendant notes, the policy reasons underlying the rule that the acceptance of a deed without covenants as to construction is the cutoff point so far as the vendor's liability is concerned, are rather obvious. Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real-estate field. Real-estate transactions would become chaotic if vendors were subjected to liability after they had parted with ownership and control of the premises. They could never be certain as to the limits or termination of their liability."

We are wholly unconvinced by the policy reasons thus advanced by the court for its holding. It seems to us that the same reasoning applied in products-liability cases would require that manufacturers of chattels not be held liable for negligently made articles.

Another case which defendants cited in oral argument to sustain their position is *Combow v. Kansas City Ground Investment Co.* (1949), 358 Mo. 934, 218 S. W. (2d) 539. There, defendant owner's agent negotiated with plaintiff and her husband for the sale of a house then being remodeled.

---

[2] On appeal the New Jersey supreme court affirmed on the ground that no negligence had been established on the part of the builder. *Levy v. C. Young Construction Co.* (1958), 26 N. J. 330, 139 Atl. (2d) 738.

It does not appear whether defendant itself was doing the remodeling or whether an independent contractor had been engaged to do it. Plaintiff and her husband purchased the premises and, after taking possession, plaintiff was injured by plaster falling from a ceiling. Recovery of damages was sought from defendant on the ground of negligence in performing the remodeling. The court held that absent an express agreement to the contrary, a vendor cannot be held liable for the defective condition of the premises.

We disagree with the rationale of these holdings as we can perceive of no public policy which would be promoted by relieving a builder-vendor from liability for damages caused by defective construction due to his failure to exercise ordinary care. As between the vendee and the builder-vendor, we deem it more equitable that the loss resulting from negligent construction, in a case of a latent defect, should be borne by the latter rather than the former.

Furthermore, since defendants constructed the building as owners but with the intent to sell it upon completion, the situation is analogous to a manufacturer who constructs a chattel, not for his own use, but for sale to others. In *Pastorelli v. Associated Engineers, Inc.* (R. I. 1959), 176 Fed. Supp. 159, the court discussed the application of the line of products-liability cases, stemming from the landmark case of *MacPherson v. Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, to cases involving real structures. It concluded that the modern and enlightened view is to apply the principles of the *MacPherson Case* to cases involving real structures. This same view is expressed in Restatement, 2 Torts, p. 1030, sec. 385. Therefore, the legal principles relating to a chattel manufacturer's liability for negligence are relevant to the disposition of this case.

There is considerable authority for the proposition that a manufacturer may be held liable in tort on the ground of

negligence for damages sustained to the manufactured product itself. *International Harvester Co. v. Sharoff* (10th Cir. 1953), 202 Fed. (2d) 52; *Fentress v. Van Etta Motors* (1958), 157 Cal. App. (2d) 863, 323 Pac. (2d) 227; *C. D. Herme, Inc., v. R. C. Tway Co.* (Ky. 1956), 294 S. W. (2d) 534; *Quackenbush v. Ford Motor Co.* (1915), 167 App. Div. 433, 153 N. Y. Supp. 131; 1 Frumer and Friedman, Products Liability, pp. 20–22, sec. 5.03 (1). In all four of the afore-cited cases, the damage to the manufactured product resulted from the occurrence of an accident and not from mere deterioration, or necessity of replacing or repairing a defective part. *Fentress v. Van Etta Motors, supra* (p. 866), lays down the requirement for recovery, when no privity exists, that the damage to the article must have resulted from an accident which "must be a casualty involving some violence or collision with external objects, not a mere marked deterioration, or even a complete ruin brought about by internal defect."

In *Trans World Airlines v. Curtiss-Wright* (1955), 1 Misc. (2d) 477, 148 N. Y. Supp. (2d) 284, affirmed (1956), 2 App. Div. (2d) 666, 153 N. Y. Supp. (2d) 546, 550, recovery in tort for negligence was denied where the damages claimed were for repairs to 55 airplane engines, manufactured by defendant, made necessary by latent defects in such engines, and no privity existed between plaintiff and defendant. The rationale of this determination was stated in these words (1 Misc. (2d) at p. 482):

"If the ultimate user were allowed to sue the manufacturer in negligence merely because an article with latent defects turned out to be bad when used in 'regular service' without any accident occurring, there would be nothing left of the citadel of privity and not much scope for the law of warranty. There seems to me to be good reason for maintaining that, short of an accident, the citadel should be preserved. Manufacturers would be subject to indiscriminate lawsuits by

persons having no contractual relations with them, persons who could thereby escape the limitations, if any, agreed upon in their contract of purchase. Damages for inferior quality, *per se,* should better be left to suits between vendors and purchasers since they depend on the terms of the bargain between them." [3]

Although we are convinced of the soundness of the products-liability theory and its application to cases involving real structures, we doubt the validity of the requirement, laid down in the *Fentress* and *Trans World Airlines Cases, supra,* that an accident must have occurred in order to recover for damages to the product itself where no privity exists. Certainly, there should be no such requirement imposed in a situation, such as the instant case, where there is privity between defendants and plaintiffs.

The *Trans World Airlines* holding raises the highly interesting question of whether a manufacturer can make a contract with his immediate vendee, which restricts the former's liability for negligence where the only resulting damage is to the product itself in a nonaccident situation, that will be effective against the ultimate purchaser who has no direct privity with the manufacturer. As between the immediate parties there is little doubt but that such a contract would be valid.[4] In the instant case, privity exists between defendant builder-vendors and plaintiff vendees. Defendants' brief quotes from the warranty clause in the contract under which the house and lot were sold to plaintiffs. However, whether such warranty clause has the effect of relieving de-

[3] Some criticism has been voiced of the *Trans World Airlines Case.* Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale Law Journal (1960), 1099, 1102, 1103; Comment, 32 New York University Law Review (1957), 197.

[4] *Pokrajac v. Wade Motors, Inc.* (1954), 266 Wis. 398, 63 N. W. (2d) 720; *Shafer v. Reo Motors* (3d Cir. 1953), 205 Fed. (2d) 685; *Charles Lachman Co. v. Hercules Powder Co.* (D. C. Pa. 1948), 79 Fed. Supp. 206; 2 Harper and James, Law of Torts, p. 1588, sec. 28.25.

fendants from liability for negligent construction is not before us on this appeal, since such contract was not pleaded in the complaint. Therefore, defendants' counsel should not have referred to material extraneous to the complaint. *Handy v. Holland Furnace Co.* (1960), 11 Wis. (2d) 151, 155, 105 N. W. (2d) 299.

We conclude that the policy of the law does not preclude recovery for damages resulting from the negligence of a builder-vendor, such as those pleaded in the instant complaint. The attainment of a just result requires that the plaintiffs be permitted to recover if they can prove the allegations of the complaint and overcome any affirmative defenses upon trial. Therefore, we conclude that the first cause of action pleaded in plaintiffs' complaint sets forth a good cause of action, and that the demurrer thereto was properly overruled.

*By the Court.*—The order is affirmed.