Filed Jan. 12, 1894.

———————◆———————

No. 707.

LYON v. THE CITY OF LOGANSPORT.

MUNICIPAL CORPORATION.—*City.*—*Sidewalk.*—*Gutter Crossing.*—*Dangerous Condition.*—*Personal Injury.*—*Notice.*—*Damages.*—*Liability.*— Where a city constructed an oval-shaped, iron gutter crossing 3 x 9 feet, in a public and much traveled street, the gutter crossing originally being perforated and creased, affording a secure foothold for passers-by, but by long use had become worn "smooth as a polished piece of wood, and very smooth, slick and slippery," so that no safe foothold was presented by it, except for a short space at each end, of the character of which crossing the city had knowledge for ninety days before an accident causing serious injury to a passer-by who was walking "slowly and carefully" along, and slipped and fell upon the crossing, the dangerous condition of the crossing being the sole cause of the injury, the city is liable in damages to the injured party.

SAME.—*Personal Injury.*—*Intervening Agency.*—*Snow.*—*Defective Sidewalk.*—In such case, the presence of snow as an intervening agency is excluded by the finding of the jury; and the fact that many people had passed over the crossing in safety, can not override the showing made by the description of this particular crossing, that it was in itself dangerous.

From the Cass Circuit Court.

*J. C. Nelson* and *Q. A. Myers*, for appellant.

*T. J. Tuley*, for appellee.

GAVIN, C. J.—The appellant brought suit to recover

for injuries alleged to have been received by reason of appellee's negligence in maintaining a defective gutter-crossing in one of her streets.

There was a trial by jury and a special verdict.

The facts found by the jury are as follows:

That the defendant, the city of Logansport, is, and for many years has been, a municipal corporation organized under the general laws of the State of Indiana for the incorporation of cities; that prior to the 18th day of January, 1892, the defendant had constructed on the west side of Third street, in said city, at its intersection with the north side of Market street, an iron gutter crossing; that said crossing was made of cast iron and was composed of three pieces, each three feet square, placed together, making a length of nine feet and a width of three feet, spanning the gutter, which gutter was one foot in depth; that the crossing pieces were about one inch in thickness and were perforated with diamond-shaped spaces, which were one and one-half inches in length, and one inch in width; that when originally put down there were creases cast diagonally in the crossing about one-fourth of an inch in depth and three-eighths of an inch wide; that the crossings, as placed for the use of the public, were bowed upwards, or presented their convex surface upwards, and they were about one inch in thickness; that they were cambered one and one-half inches—that is, the arching was one and one-half inches in the three feet across the crossing, to which the thickness of the iron being added, made the center or arching and the thickness of the crossing itself two and one-half inches; that the east or street side of the crossing rested upon a curbing stone which adjoined a flag stone and bouldered crossing leading across Third street to the east obliquely; that the top of the curb stone was two inches above the surface of the street cross-

ing at their junction; that there was a flange or shoulder cut in this stone to the depth of one-half an inch, in which the iron crossing rested on the east side of the gutter, Third street being a street running north and south, and Market street being a street running east and west in the city of Logansport, defendant; that the west end of the sidewalk edge of these three pieces of crossing rested upon a piece of timber two inches or more in thickness, laid laterally upon the sidewalk proper, making the sidewalk side of the gutter crossing, including the thickness of the grating, between three and four inches higher than the sidewalk and the grating or crossing slanted towards the west; that Market street, west of Third street, is wider than it is east of Third street, so that the street crossing leading across Third street from the east to the west side thereof ran obliquely to the west and north; that the said crossing was on a much traveled thoroughfare in a populous part of the city, and in a public place; that for one year or more prior to January 18th, 1892, the central portion of such said gutter crossing had become worn entirely smooth on the top, leaving the edges of the diamond shaped spaces smooth and rounded, and the creasings in the gutter crossings had become worn away, so that the surface of the crossing, except for a space of ten or twelve inches on the outer edges, had, by constant use, become as smooth as a polished piece of wood, and very smooth, slick and slippery, so that no safe foothold was presented by such crossing, except for a space of ten or twelve inches on each end; that the crossing was worn so smooth that numerous travelers, shod in the ordinary manner, were hindered in their attempts to pass over it, by reason of their inability to get hold upon it with their feet, which is necessary in walking forward to prevent them from slipping; that for many months prior to January 18th,

1892, said crossing had been in the slick, smooth and slippery condition, the same as when plaintiff fell, during which period numerous persons had slipped and fell upon said crossing during all seasons of the year; that the marshal of the city more than ten months prior to said date had seen at least one person fall upon said crossing; that a policeman of the city, defendant, had, during the same period, seen numerous persons slip, and one person fall, upon said crossing; that the line of travel across such iron gutter crossing, by reason of the oblique street crossing over Third street, was also oblique, and the gutter crossing was worn obliquely; and the gutter crossing was in the slick, smooth and slippery condition as aforesaid, and constructed as aforesaid more than ten months prior to and continuously up to and including January 18th, 1892; that on the 18th day of January, 1892, the plaintiff was a farmer, operating a farm, was married, 26 years of age, and in sound health and in possession of good eyesight and good mental faculties, and resided three miles from the city of Logansport; that on said day it had been snowing, and the temperature was fourteen degrees below freezing point at seven o'clock in the evening, and it was cool and chilly, and some snow had fallen upon this gutter crossing; that the plaintiff had, from time to time, passed over said gutter crossing; that he had been in the city of Logansport on an average of once a week for a number of years; that he had, at the time of the injury, no knowledge of the top of the crossing being smooth, slick and slippery, as herein found; that between seven and eight o'clock p. m., while in full possession of his mental faculties, he started, in company with three other persons, to go from the southeast corner of Third and Market streets to the opera house, situate on the west side of Third street, one square north of its intersection with Market street; that

in so doing he could have gone one square north on the east side of Third street to the south side of Broadway street and thence west across Third street to the opera house, situate at the southwest intersection of Third and Broadway streets, in which event he would have had to go over one iron crossing of similar character to the one upon which he fell, and by the route he chose there was one iron crossing, the one on which he fell; that plaintiff and his companions crossed Market street towards the north on the east side of Third street and then turned west on the south side of Market street and started across Third street; that two of plaintiff's companions were walking just in front of plaintiff, who was walking to the left of, and with another companion, as they went towards the west; that he was walking slowly and carefully along, and when they came to the crossing plaintiff's step brought his right foot first upon the crossing, which he placed upon the east edge or street side of the crossing; that he then brought his left foot forward as he walked, and when the right foot was in turn brought forward and placed upon the crossing, the right foot slipped out from under him and he fell with great force upon his right side and right leg, with his right leg under his body, and with the right foot just over the edge of the grate upon the sidewalk, with the ankle upon the edge of the crossing, and the small bone of the leg was broken transversely about one inch above the ankle joint; that he was assisted by his companion into a business room at a side door opposite the corner where he fell, where he sat down about five minutes, when he got up and started to go to a doctor's office, and went out of a door fronting the south, went diagonally across the intersection of Market and Third streets to the southeast corner of Third and Market streets, and went east on the south of Market street, a distance of about forty feet from

Third street where, the leg giving him great pain, he went into a business room and sat down, from which place he was assisted by a gentleman upon whose arm he leaned and walked to a surgeon's office about two hundred yards from where he fell; that he did not know until he reached the surgeon's office that the limb was broken; that the night was neither a very dark nor a very light one, the business rooms along the street being lighted; that the plaintiff's fall and injury, as herein found, was occasioned solely by reason of the manner of the construction and adjustment of the gutter crossing, to the grade of the street and sidewalk, as hereinbefore found, and of the crossing being worn smooth, slick and slippery, as hereinbefore found; that the defendant, more than ninety days prior to January 18th, 1892, had notice of the character of the gutter crossing and its construction and adjustment, as herein found; that the plaintiff was injured without fault or negligence on his part and solely by reason of the negligence of the defendant, as herein found; that the plaintiff had the broken limb set by a competent surgeon, and was taken to his home, where he was confined to his bed five weeks; his leg was much swollen and inflamed for a like period, during which he suffered great physical pain and mental anguish, and was frequently visited by a physician and surgeon to attend upon his leg and administer opiates to allay the pain; that he has not been able since the injury to walk without crutches or a crutch, or a cane and crutch, and has been wholly incapacitated from labor of any kind since his said injury; that he incurred an expense for the care and attention of his physician and surgeon of fifty ($50) dollars, and they were reasonably worth that sum; that he has been prevented, by reason of said injury, from following his usual avocation, or performing any kind of manual labor one hundred and

fourteen days, and that this time, including his board, was of the value of $171, per day $1.50, and we, the jury, find for the plaintiff's bodily pain and mental anguish $529; that the attached plat is a correct delineation of the locality of the injury and location of the streets and crossing upon which the injury to plaintiff occurred.

(Plat marked exhibit A.)

If, upon the foregoing facts, the law is with the plaintiff the jury find for the plaintiff and assess his damages at $750.

A municipal corporation is not an insurer of the safety of its streets, but it is bound to exercise reasonable care and diligence to keep them in a reasonably safe condition for use. *Higert* v. *City of Greencastle*, 43 Ind. 574; *City of Richmond* v. *Mulholland*, 116 Ind. 173; *City of Franklin* v. *Harter*, 127 Ind. 446; *Town of Monticello* v. *Kennard*, 7 Ind. App. 135, 34 N. E. Rep. 454.

Where the street has become out of repair, the corporation is also entitled to notice of the defect, which may be either actual or constructive. *Turner* v. *City of Indianapolis*, 96 Ind. 51; *Town of Spiceland* v. *Alier*, 98 Ind. 467; *City of Ft. Wayne* v. *Patterson*, 3 Ind. App. 34; Elliott on Roads and Streets, 460; Dillon on Munic. Corp., section 790.

It is necessary, in order to sustain a recovery by appellant, that the facts found should show culpable negligence upon the part of the city as the cause of the injury, and freedom from contributory negligence by appellant.

The facts found show that the crossing was not level, but oval shaped, and that although originally furnishing a safe foot-hold for passers-by, it had, by long use, become worn "smooth as a polished piece of wood, and very smooth, slick and slippery," so that no safe foot-

hold was presented by it except for a short space at each end.

This condition, when taken in connection with its location in a public and much traveled street, and with the other facts descriptive of its character, conclusively show it to be dangerous.

It has been adjudged that parts of a sidewalk or street may be held to be defective in cases where the circumstances made a case much less strong than this. *Cromarty* v. *City of Boston*, 127 Mass. 329; *Roe* v. *Mayor*, etc., 4 N. Y. Supp. 447.

This condition of the crossing had existed for more than ten months.

It was the duty of appellee to use active diligence to discover defects in its streets, while the appellant was only bound to use ordinary care to avoid injury. He had the right, in the absence of knowledge to the contrary, to assume that the crossing was safe, and to act upon this assumption, while at the same time using proper care upon his part. *City of Evansville* v. *Wilter*, 86 Ind. 414; *City of Washington* v. *Small*, 86 Ind. 462; *City of Columbus* v. *Strassner*, 124 Ind. 482; *City of New Albany* v. *McCulloch*, 127 Ind. 500.

It is also expressly found by the special verdict, that the city did have knowledge of the character of this crossing for ninety days before the accident. Thus we have the dangerous defect, knowledge by the city, and abundant time to repair it.

We then turn to the appellant's conduct. This seems, from the facts appearing in the verdict, to be free from negligence. The finding that he had no knowledge of the condition of this crossing, overthrows and excludes all probabilities or inferences which might be drawn from the finding that he had passed over it from time to time.

Having no knowledge of the defect, he could not be under any obligation to avoid it by going another way.

The sole cause of the accident is expressly found to have been the manner of construction and adjustment of the crossing, and its being worn "smooth, slick and slippery." Thus the presence of the snow as an intervening agency is excluded. Whatever snow had fallen upon it (and how much or how little does not appear), it affirmatively appears that it was not a factor in causing the accident. If not, then its presence (if present) could not serve to relieve the city from the results occasioned by its negligence.

Much stress is placed by counsel on the fact found that many people passed (and, as appellee claims, we should infer, in safety) over the crossing. Whatever weight should be given such a fact, it can not override the showing made by the description of this particular crossing, that it was in itself dangerous. *Nave* v. *Flack*, 90 Ind. 205; *Bauer* v. *City of Indianapolis*, 99 Ind. 56; *Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479.

For the purposes of this decision, we disregard the general finding of negligence by the city and want of negligence by the appellant. The finding that appellant walked "slowly and carefully" along, we must regard as a finding of a fact and not of a conclusion of law merely. It is descriptive of his conduct, to be considered in connection with all the facts properly found, in determining the question of due care. So, also, as to the finding concerning the condition of the crossing being the sole cause of his fall. This must be regarded as a finding of fact; so far, at least, as to fix conclusively the immediate physical cause of the fall. These findings differ widely from those in the cases referred to by counsel, wherein the jury sought to determine the ultimate question of the rightfulness of the conduct of one or both the par-

ties, and his negligence or want of negligence as legal propositions. These cases apply to the general finding, which we do disregard in this case.

Our conclusion upon the whole case is that after disregarding conclusions of law and mere evidence, every element of fact necessary to fix the liability of the appellee is properly found by the special verdict.

The judgment is, therefore, reversed, with instructions to the trial court to render judgment upon the verdict in favor of the appellant.

Ross, J., does not participate.

Filed Nov. 3, 1893; petition for a rehearing overruled Jan. 12, 1894.