ELIZABETH JANE BERRY, Respondent, v. CITY OF SEDALIA, a Municipal Corporation, Appellant.

Kansas City Court of Appeals, April 7, 1919.

1. **MUNICIPAL CORPORATIONS**: Negligence: Governmental Capacity. A city has a right in its governmental capacity to adopt a general plan of street improvement and if an injury results from a danger inherent in the adopted plan the city is not liable, but it is equally well established that if the danger has risen from the negligent construction or maintenance of the plan the city is liable.

2. **NEGLIGENCE**: Streets and Highways: Smooth and Slippery Surface. Where a city constructs or permits the surface of a much used street to become so slick as to be dangerous to persons using the same, it is liable for damages to one injured while lawfully thereon.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*G. W. Barnett* and *C. C. Kelly* for respondent.

*R. S. Robertson* for appellant.

BLAND, J.—This is a suit for personal injuries. Plaintiff having recovered a verdict and judgment in the sum of seven hundred and fifty dollars, defendant has appealed. The facts show that plaintiff, a woman seventy-one years of age, was crossing Third street in Sedalia, Missouri, from north to south on the west side of Ohio Avenue. She crossed that portion of the street used by pedestrians generally for crossing. She reached a point near the south curb line of Third Street when she discovered her daughter in the rear. Thereupon plaintiff started back north reaching a point about six or seven feet from the north curb line of Third Street when she slipped and fell, sustaining the injuries sued for.

As grounds of negligence the petition alleged that "The paving aforesaid on and near the west side of said Ohio Avenue and across said Third street was on the 2nd day of September, 1916, in a dangerous and defective condition, in that the bricks of said pavement were as originally put in and by wear thereafter and by reason of their slope so smooth and slippery as to render them dangerous to persons traveling upon them either on foot, on horseback or in vehicles." One of the defenses pleaded was that the street at the point of the accident was construed with a slope from the center to the gutter for the purpose of having the water drain from the center of the street to each side thereof; that the paving of the street "with the crown or center higher than the sides is the proper and customary way of making and constructing brick pavements, and was made in accordance with the plan adopted by the City Council of Sedalia, Missouri, for paving said street."

The evidence shows that the street at the point of the accident was constructed, as alleged in the answer,

with the crown or center higher than the sides and with a gradual slope toward the curbs. The material used in the pavement was vitrified brick which had been laid some years before the accident. The only defect in the pavement was that it had been originally constructed extremely smooth and slippery or had become so by constant wear. There was a one-way street car track in the center of the street, composed of two rails. From the north rail of the track to the curb was thirteen feet. Between these two points there was a fall of twelve inches. This crossing on Ohio Avenue was the most traveled point of any street of the city of Sedalia. The testimony was that the point where plaintiff fell was *very* slick; a witness saying. "I don't know how I can qualify "very." It was very much slicker than the rest of the street west of where plaintiff fell. One witness testified, "It had been gradually getting slicker all the time. I expect thousands of people go over that street every day, and it is just the constant wear—the result of constant wear; there are no people walking over the other part of the street except that; there is no other part of the street used so very much." Many persons had slipped and fallen at the same place previously, and there was evidence that "it was a very common occurrence— . . . to see somebody fall on that street there." One witness testified that he, himself had slipped and fallen at the same place. Sometimes after the accident the city placed a coating of asphalt over the crossing.

Defendant urges that its demurrer to the evidence should have been sustained, defendant claiming that cities are under the duty to construct their pavements and sidewalks to present a smooth and even surface and that they are not liable for injury to persons slipping thereon. It may be conceded that cities should construct and maintain smooth and even surfaced streets and sidewalks but this does not authorize such cities to construct or permit the surface of their much used streets and sidewalks to become so slick as to be dangerous to persons using the same. The evidence in this

case shows that the place where plaintiff fell was so extremely slick as to be highly dangerous to pedestrians, and we think there is no question but that the city was liable for maintaining its street in such condition under the circumstances. [Cromarty v. City of Boston, 127 Mass. 329; O'Brien v. St. Paul, 116 Minn. 249; Lyon v. City, 35 N. E. 128 (Ind. App.).]

Defendant makes the point that its demurrer to the evidence should have been sustained for the reason that defendant claims that the petition fails to state a cause of action in that, as defendant says, the petition bases plaintiff's right to recover upon the slope of the street and the condition of the pavement as originally put in under a general governmental plan; that the evidence likewise shows plaintiff was injured by reason of a defect in such a plan and that as the construction of the street with the crown or center higher than the gutter, was in accordance with this general plan of the city, the city is not liable.

Of course, it is well settled that the city has a right in its governmental capacity to adopt a general plan of street improvement and if the injury results from a danger inherent in the adopted plan the city is not liable, but it is equally established that if the danger has arisen from the negligent construction or maintenance of the plan, the city is liable. [Kirkhimer v. City of Sedalia, 200 S. W. 298; Gallagher v. Tipton, 133 Mo. App. 557; Ely v. St. Louis, 181 Mo. 723; Tippensee v. Jefferson City, 174 Mo. App. 727-729; Hays v. City, 159 Mo. App. 431; Nelson v. Kansas City, 170 Mo. App. 542.]

We do not construe the allegation of the petition as making the slope of the street, for which defendant was not liable, a part of the alleged negligent acts of the defendant. The negligence alleged in the petition is that the bricks were originally put in in such a smooth and slippery condition as to ,render them dangerous and that they thereafter were by continued wear made smooth and slippery so as to render them dangerous; that such smoothness and slipperiness, both at the time

of the construction of the street and at the time of the injury, was dangerous on account of the slope existing in the street upon which the bricks were placed. While defendant would not be liable for planning the street so as to have a slope to the sides, yet when it constructed the pavement and thereafter maintained it, the city was under the duty in view of the condition present, that is, the slope, to see that the surface did not become so smooth and slippery as to render it dangerous to persons traveling upon the street.

Certainly, we cannot say as a matter of law that the evidence shows that plaintiff was injured by reason of the plan of the city in providing the slope in the street. There was no evidence that it was a plan of the city to construct or maintain a slick pavement such as to render the street dangerous to pedestrians. Defendant's engineer testified that the slope of the street was constructed with reference to a general plan, but there was no evidence in the record that the general plan included a dangerously smooth surface and we cannot assume that as a part of the plan of constructing its streets the city in its governmental capacity intended a plan that included a paved surface dangerously slick to pedestrians. In fact, we may presume to the contrary.

Defendant complains that the court erred in giving plaintiff's instruction No. 1. This instruction, which directed a verdict for plaintiff, told the jury that, "if you find and believe from the evidence that at the time plaintiff alleges she was injured, the bricks in said crossing at the point where she was injured were, as originally put in, or by reason of wear thereafter, so smooth and slippery that, taken in connection with their slope, said crossing was unsafe or dangerous for pedestrians, and if you find that such condition existed when said crossing was originally constructed or had existed for such a length of time before plaintiff's injury that the officers of the city in charge of its streets could, by the exercise of reasonable diligence, have discovered the condition of such crossing and had a reasonable

time thereafter to correct such condition before plaintiff fell thereon, if she did fall, and if you further find and believe from the evidence that on or about the 2nd day of September, 1916, the plaintiff slipped and fell upon said crossing on account of such smooth and slippery condition, if any, of said bricks, taken in connection with the slope thereof," etc.

Defendant claims that the petition alleges the original construction and the wear conjunctively, and that in plaintiff's instruction No. 1 the two were submitted disjunctively, that is to say, the petition alleges that the original construction combined with the wear upon the street thereafter, constituted the negligence pleaded, while the instruction permitted plaintiff to recover if the pavement was originally put in in a dangerously slippery and smooth condition *or* it became dangerously smooth and slippery thereafter by wear. We see no merit in this contention. It would require a strained construction of the petition to say that it alleges other than that the pavement was dangerously smooth and slippery at the time it was constructed and likewise dangerously smooth and slippery by wear thereafter. In either event plaintiff was entitled to recover and the instruction so told the jury.

Defendant complains that this instruction is also erroneous for the reason that if the bricks were dangerously smooth when first put in, the defendant is not liable, defendant claiming that the construction of the pavement was a part of a plan of the city. We have already ruled against this contention of the defendant in connection with another point. We do not think that the instruction submits the slope as a part of the negligence of the defendant.

Defendant contends that plaintiff's instruction No. 2 was erroneous; said instruction is as follows:

"The Court instructs the jury that greater diligence on the part of the defendant is required in looking after the condition of a street or crossing whre such street or crossing is much traveled than where it is little used."

This instruction is approved in the case of Miller v. Town of Canton, 112 Mo. App. 322, l. c. 329, 330. In addition, instruction No. D told the jury that "all that the city is bound to do is to exercise the care for maintaining its sidewalks and streets in the reasonably safe condition that an ordinarily prudent person would exercise, and if the city "used such care in the construction and maintenance that an ordinarily prudent person would exercise, then your verdict must be for the defendant." Taking the two instructions together there is no question but that the jury could understand nothing but that the city was required to use ordinary care, only, in view of all the circumstances.

Defendant complains of the refusal of the court to give defendant's instructions Nos. 4 and 5. These instructions were properly refused because they confine plaintiff's right to recover to the pavement being worn so smooth and slick that it was unsafe for people while traveling thereon, when plaintiff was entitled to recover even if the jury believed that it had not been worn dangerously smooth and slick but was dangerously smooth and slick when originally constructed. The court gave instruction No. C in substantially the same form as defendant's offered instruction No. 5, but amended the latter so that plaintiff might recover if the pavement was originally put in in a dangerously smooth and slick condition.

Defendant's instruction No. 6 was properly refused because it told the jury that it was the duty of the city "to construct and maintain its pavements and streets in a reasonably smooth condition and the mere fact that by reason of the same being smooth it may be more or less slippery, is not negligence on the part of the city." This was substantially a demurrer to the evidence and was properly refused.

The court properly refused defendant's instruction No. 7. This instruction told the jury that the "city was not an insurer of the safety of pedestrians and the mere fact that the pavement in question may have

been somewhat smooth and slick, and that plaintiff was injured by reason of such smoothness and slickness does not entitle plaintiff to recover in this case, but all the city is bound to do is to exercise" ordinary care under the circumstances. The court refused this instruction and gave it in substantially the same form except it told the jury that plaintiff was not entitled to recover on account of the smoothness and slickness "unless said smoothness and slickness was brought about or suffered to continue, as defined in other instructions." The court properly refused the instruction as offered and was right in giving it in amended form.

The judgment is affirmed. All concur.