## LEONARD ET AL. *v.* LEE ET AL.
### [No. 12, October Term, 1948.]

*Decided November 11, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Kenneth C. Proctor* and *Daniel B. Leonard,* with whom were *Bowie, Burke & Leonard* on the brief, for the appellants.

*Michael Paul Smith,* with whom was *W. Albert Menchine* on the brief, for County Commissioners of Baltimore County, appellees.

*John Grason Turnbull* for Julia S. Lee and others, appellees.

MARBURY, C. J., delivered the opinion of the Court.

On August 24, 1946, Mrs. Elma W. Leonard slipped on the sidewalk in front of 501-503 York Road, Towson,

and injured herself.  She sued the owner of the premises, the tenant and the County Commissioners of Baltimore County in the Circuit Court for Baltimore County.  Her husband also brought suit for expenses and loss of services.  The two suits were tried together.  At the conclusion of the plaintiffs' testimony, the court granted demurrer prayers on behalf of the defendants in both cases, and also a contributory negligence prayer in Mrs. Leonard's case.  As a result of the verdict for the defendants in both cases, judgments were entered in their favor for costs, from which the appeals are taken here.

York Road, where its runs through Towson, is a State Highway under the control of the State Roads Commission.  The record does not disclose whether the sidewalk on which the accident occurred was within the right of way of the State Roads Commission, or whether it was within the property lines of the owners of numbers 501 and 503.  There is no evidence of any dedication of the sidewalk by a plat or in any other way except by user by the public, and there is no evidence of any acceptance by the County Commissioners, who have charge of sidewalks in Baltimore County, unless that is to be inferred from general user by the public, and from the fact that, in the block below, there is one place where the County Commissioners reconstructed the sidewalk which the owner of the property paid for.

The portion of the sidewalk where the accident occurred was on the west side of the York Road, near the corner of Pennsylvania Avenue.  At the northwest corner of these two streets is located the Adler Store which is number 501, and next to it, on the north, is the Dunleigh Store, which is number 503.  These two stores have a common entrance to the street.  Mrs. Leonard had been in the Dunleigh Store, cut diagonally across the entrance and as she took her first step from this entrance out on the sidewalk, she slipped and fell.  She was carrying her infant son, and perhaps as a result of this, she was unable to catch herself, and fell on her right hip, which was broken.  Dunleigh and Adler were-

sub-tenants of C. Maynard Wagner. They were not made party defendants, but Mr. Wagner was. When he rented the entire property in 1932 or 1933, he rebuilt the sidewalk along York Road. At that time the store on the properties was remodeled and extended to the building line, and a new entrance was put in. At the time this was done, a step, formerly there from the store to the street, was eliminated, but the record does not seem to indicate that there was any change in the grade of the sidewalk itself, at the time Mr. Wagner had it laid. The sidewalk slopes somewhat, following the contour of the street, both to the south and to the east. There is no evidence as to who built the sidewalk originally, nor is there evidence that the sidewalk was badly constructed in 1933 by Mr. Wagner. The testimony of Mr. Leonard, who was the only eyewitness to his wife's fall, was that he slid his foot along the sidewalk where she had fallen, and it was very slippery, and he noticed it was on an angle. The slippery spot, according to him, was about 18 inches in diameter. It was a clear dry day. The only evidence that the sidewalk became slippery through wear was Mr. Leonard's affirmative answer to a question asked on cross examination by counsel for Mr. Wagner that "what caused your wife to fall was the worn smooth slippery spot on the pavement, is that right?" There was some evidence that Mr. Wagner had some time previously put two of his clerks out with a hatchet to nick the sidewalk, but that this did not improve the slippery condition. There was also evidence that in the course of the years, several people had fallen on the sidewalk, although none of them fell on the exact spot where Mrs. Leonard fell, and all of these falls but one were in wet weather. The sidewalk was made of cement. Except for the fact that it was smooth, there is no evidence that it was in any way different from the ordinary cement sidewalks on city streets.

As to the owner of the property, it seems to be well settled that the abutting owner is not liable to pedestrians for injuries resulting from his failure to keep in repair

a public sidewalk which he had not constructed. *Canton Co. v. Seal,* 144 Md. 174, 125 A. 63; *Citizens Savings Bank v. Covington,* 174 Md. 633, 199 A. 849. Nor is he liable for a failure to keep the walk clear, even where a statute or ordinance requires that the pavement be kept free of snow and ice. The duty is owed to the authorities and not to the private individual who happens to slip. *Flynn v. Canton Co.,* 40 Md. 312, 17 Am. Rep. 603. Compare *East Coast Freight Lines v. Consolidated Gas etc. Co.,* 187 Md. 385, 50 A. 2d 246. As to the tenant, he is not liable unless his construction was faulty, and we can find nothing in this record to indicate that the slippery sidewalk was due to such construction. The question of primary importance is whether there is sufficient evidence of negligence on the part of the defendant County Commissioners to justify the submission of the cases against them to a jury.

Unless there is some duty owed by the Commissioners to the public, and to the plaintiffs as part of the public, there is no negligence, because negligence necessarily involves the breach of a duty. *Holler v. Lowery,* 175 Md. 149, 200 A. 353; *East Coast Freight Lines v. Consolidated Gas etc. Co.,* 187 Md. 385, 50 A. 2d 246. The duty owed by a municipal corporation to those lawfully using the sidewalks under its control is not that of an insurer of their safe passage. Where there are dangerous obstructions or depressions of which the municipal authorities have actual notice or which have existed long enough to give constructive notice, a municipality is liable if a person is injured because of such condition. It is obvious that each case is different and, therefore, each case must stand upon its own particular facts, but this Court has differentiated between conditions which will render the municipality liable, and those which are the necessary concomitant of use over a period of time. A pedestrian sued the abutting owner and the City of Baltimore for injuries sustained when he slipped on a sidewalk and broke his leg. The testimony was conflicting, and the Court said it was a case

for the jury, because in one aspect of the case the plaintiff was entitled to recover, and in another he was not.  There was an iron door over an opening in the sidewalk leading to a cellar.  There was a frame for the iron door and, at the building line, there was a small opening between the frame and the cellar door.  The pedestrian claimed that he caught his foot between the frame and the cellar door and thereby fell.  A witness for the defendants said that it was slippery, and the cause of the fall was a sudden slip.  This Court said "If he in fact fell as described by the witness for the defendant, referred to above, we would have no hesitancy in holding that the plaintiff could not recover, for we would not be willing to hold that there could be a recovery simply because there was a cellar door there in the sidewalk which, being slippery that morning, caused the plaintiff to fall.  No municipality nor abutting property owner could be held responsible for an injury thus caused, without imposing a burden which would be unreasonable, and if imposed would prevent the use of parts of sidewalks for purposes which in cities and towns are practically essential to the proper and reasonable enjoyment of property abutting on public streets and in large cities would require the abandonment of the use of important spaces under parts of sidewalks for cellar entrances, coal chutes, vaults, etc., which would result in serious losses and a waste of valuable space, which can be properly utilized without causing much, if any, inconvenience to the public.  But if the accident was caused as the plaintiff claims, then another question is presented.  While a municipality must generally respond in damages for injuries caused by its negligence, acts or ommissions, especially in connection with the public streets and sidewalks under its care and control, there must be a limit to such liability, and it cannot be held responsible for injuries caused by every depression, difference in grade, or uneveness in sidewalks.  No city, town, or village could maintain a perfectly level or even surface in all of its sidewalks without burdening the property owners with unreasonable and unnecessary

taxation. No resident or visitor of a city, town or village has the right to expect such conditions. Pavements will in time become irregular and uneven from roots of trees, heavy rains and snows or other causes." *Cordish v. Bloom,* 138 Md. 81, pages 84 and 85, 113 A. 578, 579. In another case there was a defect in the pavement consisting of an elevated edge in a section of the concrete pavement. The plaintiff fell over this elevation which had existed for a number of years, and over which a number of pedestrians had fallen. The court again defined the difference in the following words: "While the defendant would not be chargeable as a municipal corporation for injuries resulting from every slight unevenness in the sidewalks of public thoroughfares under its control (*Cordish v. Bloom,* 138 Md. 81, 113 A. 578), there is a clear and adequate basis for such a liability where, as in this case, a particular defect is shown to have been in fact an impediment to the reasonable safe use of the street, and to have existed so long as to warrant an imputation of notice to the municipality." *County Commissioners v. Collins,* 158 Md. 335, at page 336, 148 A. 242, 243. In a later case which was the result of an injury caused by falling into a hole in the pavement, the court approved a prayer which instructed the jury that the duty imposed by law upon the City of Baltimore did not require it to keep its public streets in perfect condition and repair, but only that it should use reasonable care and diligence in the exercise of the powers vested in it regarding public streets. *Lynch v. Baltimore,* 169 Md. 623, pages 630 and 631, 182 A. 582. In the case before us there was no obstruction on the sidewalk. The slope followed the natural contour of the land and there is no evidence that the slippery condition of the sidewalk was anything other than the ordinary condition of any paved street which has been walked upon for a considerable length of time. It is not shown that there was any hole in the sidewalk and, while there is evidence that other people had fallen at different times during the years on other portions of the sidewalk, adjacent to the

point where Mrs. Leonard fell, all falls, except one, occurred when the pavement was wet, which was not the case here. The sole fall which happened when the pavement was dry (except that of Mrs. Leonard) was not blamed, by the person falling, on a slippery condition of the sidewalk. She simply said she fell.

There could not be any inherent lack of care in paving a sidewalk with cement, or in letting a cement sidewalk remain unrepaired, unless it was broken or was in such a condition that it was obviously dangerous. Here we have, at most, a case where the pavement became slightly irregular (if it was worn as claimed by one of the plaintiffs) from the action of time, and this Court has already said, in *Cordish v. Bloom, supra,* that a municipality is not liable for such a condition.

The appellants strenuously contend that the slippery condition of the sidewalk constitutes an actionable defect, and they cite in support of their contention a number of cases from other jurisdictions. Each case has distinguishing features, and some courts extend liability farther than others. We have examined the authorities cited and referred to and listed below, and do not find them, for the most part, different in principle from our own cases. See *City of Newport v. Schmit,* 191 Ky. 585, 231 S. W. 54; *O'Brien v. City of St. Paul,* 116 Minn. 249, 133 N. W. 981, Ann. Cas. 1913A, 668; *Cromarty v. Boston,* 127 Mass. 329, 34 Am. Rep. 381 (decided 1879). Compare *Shinkwin v. H. L. Green Co.,* 318 Mass. 70, 60 N. E. 2d 372 (decided in 1945) ; *Lyon v. Logansport,* 9 Ind. App. 21, 35 N. E. 128; *Whyers v. Quincy,* 208 Ill. App. 49; *Birmingham v. Monette,* 241 Ala. 109, 1 So. 2d 1, 133 A. L. R. 1020, Ann. 1026; *Lampe v. Kansas City* (Mo. App.) 49 S. W. 2d 627; *Schuler v. Mobridge,* 44 S. D. 488, 184 N. W. 281; *Berry v. Sedalia,* 201 Mo. App. 436, 212 S. W. 34; *Wheeler v. Maryville,* (Tenn.) 203 S. W. 2d 924; *District of Columbia v. Williams,* D. C. Mun. App., 46 A 2d 111; *Maloney v. City of Grand Forks,* 73 N. D. 445, 15 N. W. 2d 769; *Louisville v. Wheeler,* 301 Ky. 222, 191

S. W. 2d 386; *Denver v. Hickey*, 9 Colo. App. 137, 47 P. 908.

The cases differ on what is considered a dangerous condition and what is merely a trivial defect which the authorities are not negligent for failure to remedy. Some of the New York courts even go so far as to establish arbitrary limits for the height of elevations or the depth of depressions, holding that under these limits the municipality will not be responsible. The better considered authorities, however, hold that, on the facts in each case, the court should determine whether there is sufficient evidence of the gravity of the alleged defects to permit a jury to consider the question of negligence. In some of the cases cited by the appellants, the evidence of a worn and slippery pavement has been held sufficient, but in these cases the courts have said that the condition was "inherently dangerous" (*O'Brien v. St. Paul, supra*), or "no safe foothold" was presented (*Lyon v. Logansport, supra* [9 Ind. App. 21 N. E. 129] ) or the place of the accident was "highly dangerous" (*Berry v. Sedalia, supra*) or the sidewalk was "exceedingly smooth" resembling "a glazed surface" (*Denver v. Hickey, supra* [9 Colo. App. 137, 47 P. 909] ). There is no testimony in the cases before us, upon which such statements could accurately be made.

In the cases, the proof shows no appreciable defect in the pavement, and no excessively slippery condition. The smooth condition of the sidewalk, if it presented a defect at all, did not, in our opinion, present more than such a trivial and slight difference from an ordinary cement walk, that there was no sufficient evidence upon which the jury could find that the County Commissioners were guilty of any lack of reasonable care. We, therefore, conclude that the trial court acted correctly in granting the demurrer prayers of all the defendants, and the judgments will be affirmed. We are not unmindful of the other questions raised by the County Commissioners, namely, whether there is any evidence that the sidewalk is a public way under their control, and whether the

Commissioners had such constructive notice of any defect in the sidewalk as would render them responsible. In view of our conclusions, it is unnecessary to discuss these questions.

*Judgments affirmed, with costs.*