## CITY OF FERGUSON v. MARROW.
### No. 14896.

United States Court of Appeals
Eighth Circuit.

March 3, 1954.

See also D.C., 114 F.Supp. 755.

Herbert E. Bryant, St. Louis, Mo. (Norman C. Parker, St. Louis, Mo., was with him on the brief), for appellant.

Robert D. Evans, St. Louis, Mo. (J. Porter Henry and Green, Hennings, Henry, & Evans, St. Louis, Mo. were with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Plaintiff recovered a judgment against the City of Ferguson, Missouri, for personal injuries received by him when in diving from a diving board he struck his head on the bottom of a public swimming pool owned and operated by the City.

The negligence charged was that the pool was so designed and constructed that the water depth was inadequate and unsafe for the use of the diving board maintained by the City; that the water depth was misrepresented by an 11-foot mark on the sides of the pool at points where the water was not that deep; and failure to warn plaintiff of the danger of using the diving board.

The issues presented by the City on this appeal are that (1) its motion for a directed verdict should have been sustained because in designing and constructing the pool the City was acting in its governmental capacity and is not liable in tort for improper design; (2) that if negligence in the construction of the pool or in failing to warn plaintiff of danger was shown, that such negligence was not shown to be the proximate cause of plaintiff's injury; and (3) that plaintiff was guilty of contributory negligence, which barred his recovery.

The case was submitted to the jury on all three assignments of negligence. The form of the charge is not challenged. The material evidence viewed in the perspective most favorable to the propriety of the verdict, which must be done in testing the sufficiency of the evidence to justify submission of the issues, was in substance as follows:

Plaintiff, a student 21 years old, was an experienced but not an expert swimmer. He was not familiar with this pool, never having seen it before the day of his injury. The pool had been in operation for about a year prior thereto. The minimum safe length of deep water for the use of a three-meter diving board[1] is 40 feet. This pool was so designed and constructed that the distance from the east or deep end of the pool to the beginning of the shallow water (5-foot depth) was 31 feet. The bottom sloped down from a depth of 5 feet at the east end at a steep incline to a depth of 11 feet, 9 feet west of the east end of the pool. There was then a level space one foot wide in which the drain was located. The bottom then sloped upward on a straight line of incline to the beginning of the 5-foot depth, or shallow water, 31 feet from the east end. The total length of the pool was 100 feet. For the use of a three-meter board the minimum safe depth of water for a distance of 20 feet in front of the end of the diving board was 9 feet. The end of the three-meter board was five feet from the east end. At 20 feet from the end of the board the depth was six feet nine inches. It was not unusual for divers who were not experts or professionals to enter the water on a long dive 15 feet in front of the end of the board. At that point the depth of water in this pool was about eight feet three inches. On both the north and south sides of the pool there were marks —"Deep 11 Ft."—painted on the sides. On the north side the numeral "11" was 14 feet 4 inches from the east end of the pool. At that point the water was approximately 10 feet deep. The numeral "11" on the south side was 15 feet 8 inches from the east end. At that point the water was approximately nine feet six inches deep. The City knew that it was dangerous for persons to make long dives of 15 feet from the three-meter board and had instructed the life guards to warn persons making such dives that it was dangerous.

About noon, or shortly thereafter, on May 30, 1951, plaintiff and a companion went to the pool for a short swim. They paid their admittance fee and plaintiff walked down the south side of the pool to the east. He saw an arrow pointing to the east and the words "Danger Deep Water" painted on the walkway or "deck" at about the point where a rope with cork floats extended north and south across the pool near where the shallow water ended. He went on to the east end and made several "gainer" or flip dives from a one-meter board. In making gainer dives the swimmer enters the water a

---

1. A three-meter board is one which is three meters, or slightly less than ten feet, from the level of the water. A one-meter board, which will be referred to hereafter, is one meter from the water level.

few feet, usually two or three, in front of the diving board. Plaintiff saw the "Deep 11 Ft." marks painted on the sides of the pool. He knew something about the ordinary construction of swimming pools and assumed the water was a proper depth for the use of the diving boards. He then went up to the three-meter board and made one gainer dive. He did not touch the bottom. Then he made a "swan" or long dive from the three-meter board. Two lifeguards were on duty at their posts on each side of the pool. Both testified that they were instructed to warn persons making long dives that it was dangerous. Neither of them warned plaintiff. There were no signs warning against long dives. Because of the waves on the water and the reflection from the sky, plaintiff could not see the bottom. He entered the water about 15 feet from the end of the diving board and struck his head on the concrete bottom of the pool about 21 feet in front of the end of the three-meter board. At that point the water was six feet five inches or six feet six inches deep. He immediately came to the surface and called for help. The lifeguard helped him from the pool. His head was injured and bleeding. He was paralyzed from the waist down and continued to be at the time of the trial, February 2, 1953.

■ The record furnishes no evidentiary basis for the application of the doctrine that the City was acting in its governmental capacity and hence is not liable in tort for negligent design or construction of the pool. There is no evidence in this record that the City by ordinance adopted the plans by which the pool was built. Nor is there any evidence that the City in its governmental capacity directed the use of the three-meter diving board. And if the Park Board approved and adopted the plans and specifications for the pool and the diving board, its action was not a governmental action by the City. As stated by the Supreme Court of Missouri in Boyd v. Kansas City, 291 Mo. 622, 237 S.W. 1001, 1007; "The city could not delegate the

exercise of governmental powers to a ministerial body like the board of public works." See also Berry v. City of Sedalia, 201 Mo.App. 436, 212 S.W. 34.

In Hays v. City of Columbia, 159 Mo. App. 431, 141 S.W. 3, the Kansas City Court of Appeals sustained the defense that the City was acting in its governmental capacity without a showing that the City had actually by ordinance approved a gutter crossing, the improper design of which caused the injury involved. But in the later case of Berry v. City of Sedalia, the same court refused to countenance that defense in the absence of a showing by the City that the type of brick used, the slipperiness of which caused the injury, was approved by the City in its governmental capacity. And in the still later case of Metz v. Kansas City, 229 Mo.App. 402, 81 S.W.2d 462, the same court puts the question at rest by holding that a plan of street improvement made by the park board will not suffice as a governmental act of the City in the absence of a showing that the City actually approved the design in its governmental capacity and not as a ministerial act.

■■ The contentions that the negligence of the City in not warning plaintiff of the danger was not the proximate cause of his injury are predicated upon the theory that the danger was patent and obvious to him, a corollary to the proposition that plaintiff was guilty of contributory negligence. Neither assignment has merit. The diving board was an invitation for its use, with an implied representation that its use was not dangerous. It was not used in a manner which the City should not have reasonably anticipated. It was dangerous and the City was charged with knowledge thereof. The jury was warranted in inferring that the City had actual knowledge of the danger. There were no warning signs. Plaintiff was given no warning. He could not see the bottom of the pool and did not know and could not tell how deep the water was. The danger was therefore not so obvious

to him as to eliminate the failure to warn as a proximate cause of his injury or to make him guilty of contributory negligence.

The judgment is affirmed.