Margaret JENKINS

v.

The GREAT ATLANTIC AND PACIFIC TEA COMPANY, a body corporate.

Civ. A. No. 7383.

United States District Court,
D. Maryland, Civil Division.

Feb. 10, 1955.

Joseph Kolodny, Baltimore, Md., for plaintiff.

Wm. B. Kempton, Barton, Wilmer, Bramble, Addison & Semans, Robt. E. Coughlan, Jr., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is an action by the plaintiff, a customer of the defendant, to recover damages for personal injuries sustained by her in consequence of falling over a boy's express wagon just outside the front exit door from the defendant's premises. The small wagon was not within the store building but was outside on the public sidewalk used for pedestrian traffic, and also for entrance into and exit from the defendant's premises which were leased to the defendant by the owner.

At the conclusion of the plaintiff's case, and again after some little further testimony by the defendant, counsel for the latter requested in writing an instructed verdict for the defendant on the grounds (a) that there was no evidence legally sufficient to entitle the plaintiff to recover; (b) that by the uncontradicted evidence the wagon was not owned or used by the defendant or its employees and was not under the control of the defendant or its employees and (c) that under the uncontradicted evidence the plaintiff was guilty of contributory negligence. As the whole evidence occupied a comparatively quite short time it was not then practicable for the court to make a careful examination of the Maryland cases applicable to the subject matter, and the case was submitted to the jury on a very narrow issue. After some hours of deliberation the jury was unable to agree and was discharged. The defendant thereafter and in due time filed a motion for judgment in favor of the defendant in accordance with rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Counsel have been heard upon this motion, which, after careful consideration I have concluded must be granted.

The substance of the evidence in the case was this. The defendant's grocery store was on Fort Avenue in Baltimore City. It was of moderate size, in the middle of the block, and had two doorways each consisting of panelled glass with customary frame, one opening inwards from the sidewalk marked "In" and the other of similar size marked "Out". Where the double doors opened outwards onto the sidewalk, in both cases the bottom of the doors being flush with the well-paved concrete sidewalk.

The plaintiff had for some years previously off and on been a customer at this store and was familiar with the fact that from time to time small boys with their express wagons waited in front of or near to the defendant's store for the purpose of soliciting employment to carry merchandise bought by the customers of the store to their homes generally nearby for some small compensation. When the plaintiff entered the store on the date of her accident in the afternoon of October 24, 1953, she saw some of these boys with their wagons there. It was broad daylight at the time. After she had made some purchases and was carrying her

parcels under each arm, she left the store by the door marked "Out" and, according to her own evidence, immediately tripped over a boy's small wagon just after she had emerged from the doorway. A clerk whose desk on the inside of the store was near the doorway, noticed through the glass panel that the plaintiff had fallen and called the manager of the store who at once went to see if the plaintiff had been hurt and if so offered to take her home; but the plaintiff said she had been hurt and wished to go at once to a hospital. Some one called a police ambulance which promptly came and took her to the hospital where it was found that she had fractured one or more bones in her leg for which she was hospitalized for a time but made a fairly normal recovery in due course. Her doctor testified that as a result of her accident she had a ten per cent. disability of the right ankle. Subsequently on April 26, 1954 she brought this suit against the defendant to recover damages for the injuries sustained.

The plaintiff also called as her witness the police officer, James Miller, who had summoned the ambulance, who testified on direct or cross-examination to the effect that on a number of occasions he had been instructed by his superior officer to chase the boys away from around the defendant's store, and that he on each occasion had done so but that as they were quite young boys it was not practicable for him in the performance of his duties as a patrolman to keep them away because as soon as he was away from the place they would generally soon return. He also testified that after the plaintiff had been taken to the hospital he went to confer with her in his duty of investigating the nature and cause of the accident, and was told by her at the time, although she was still suffering discomfort from her fall, that she had fallen over the wagon after she had taken about five steps.

The plaintiff further called as a witness James Duckett who was the manager of the defendant's store and had been acting in that capacity for about three years past. He stated that the defendant had never engaged or voluntarily permitted the boys to be present with their wagons but that their presence was in the nature of an annoyance or nuisance and that on many occasions, sometimes two or three times a week, he had telephoned the police station to send an officer to drive the boys away. The plaintiff offered no evidence to the contrary and there was no evidence to show that the defendant or its employees had ever employed or paid the boys or in any way encouraged them to be there. He, however, said that he understood they frequently made considerable small sums of money for their services to customers in carrying merchandise home for them. I understand the practice is not uncommon at other "cash and carry" grocery stores in Baltimore; but I do not consider that as material to the decision in this case.

The plaintiff offered no evidence tending to show that the particular wagon over which the plaintiff tripped or fell on going through the exit door had been there any length of time prior to the accident and there was no evidence to show that the defendant or its employees had any knowledge or notice of its being there prior to or at the time of the accident.

■ So far as the defendant's request for an instructed verdict was based on contributory negligence, that would clearly have been an issue for the jury on its appraisal of the whole evidence. But as a result of hearing the arguments of counsel on the motion and my examination of the Maryland cases I have concluded that the defendant's motion should be granted because there was no evidence legally sufficient to establish negligence in law or in fact attributable to the defendant, and no evidence that the presence of the obstruction on the sidewalk was known or used by the defendant or its employees and was not under their control or procurement either directly or indirectly.

■■ As the jurisdiction of this court was based solely on the diversity of citizenship the question of law raised by the defendant's motion must be decided

on the decisions of the Maryland Court of Appeals, there being no applicable statutory law upon the subject. There is no reasonable doubt with respect to the Maryland law relating to the duties and obligations of the proprietor of business establishments, whether landlord or tenant, to customers of the store who have the status of invitees. The store proprietor must exercise that degree of ordinary care in the conduct of its premises which is usual and customary and required in a store or business of like nature. There are many Maryland cases which illustrate this general rule but no case has been called to my attention in which the proprietor of a store has been held liable for obstructions to the sidewalk in front of his store place and outside of the premises under his management and control. The contention of plaintiff's counsel is that the storekeeper must keep not only his premises inside the store in good repair and condition and use ordinary diligence to avoid accidents to customers or invitees, but that he is also required to keep the approaches to his store, including the pavement outside of it, free from obstructions. No Maryland authority is cited to support this view nor am I able to find that it is consistent with the general law as would probably be the decision of the Court of Appeals of Maryland in such a case.

On the contrary there are several Maryland cases dealing specifically with the subject matter of the liability of owners of property abutting on a highway with regard to accidents occurring to pedestrians or members of the public using the pavements in front of their properties. There was no evidence in this case with respect to the title or ownership of the defendant of the particular property other than that it had been leased to the defendant. Possibly it may fairly be assumed, in accordance with what the court understands to be very generally title situations of property owners abutting on public streets that the owner of real estate so abutting holds title to the property out to the curb line or portion of the street for vehicular traffic; while the building line is restricted to a distance of approximately 13 feet back from the curb. This reserved space is for the benefit and use of the public consistent with statutory and municipal law.

Section 142 of Art. 24 of the Baltimore City Code, 1950, (a municipal ordinance) provides:

> "Every occupant of any premises within the City and the owner of premises that may be vacant shall be required to keep the sidewalks bounding upon such premises and the gutters belonging thereto, open and free of obstructions."

The violation of the requirement is in the nature of a police matter punishable by fine. The effect of a similar ordinance was considered by the Maryland Court of Appeals in the early case of Flynn v. Canton Co., 40 Md. 312, where the plaintiff sued the owner of abutting property to recover damages sustained when the plaintiff fell upon ice covering the pavement. A City Ordinance required the abutting owner to remove and clear away snow and ice from the pavement within a required period of time under penalty of a fine. The Court of Appeals in affirming the denial of recovery to the plaintiff said, at page 326:

> "In so determining we recognize the well settled principle that whenever a party causes, constructs or creates a nuisance or obstruction in a public street or highway, he is responsible in damages to any one who has received special injury in consequence thereof. * * * There is, however, as we think a plain distinction between such cases and the one before us. Here the nuisance, if such it be, was not caused or created by the act of the party sued. The ice, the occasion of the injury, was not on the property of the Defendants nor was it placed on the pavement through the slightest instrumentality or agency on their part."

The reasoning of the court in this case is, in my opinion, applicable to the

instant case. I construe the requirement of the City Ordinance to be applicable to obstructions upon the sidewalk placed there by the owner or its agents or representatives; but not applicable to such obstructions as may be placed there by third persons not under the control and authority or instrumentality of the defendant or its agents. In the instant case there was no evidence that the defendant did either procure, invite or in any way control the actions of the young boys but on the contrary the affirmative evidence on behalf of a witness called by the plaintiff was that the defendant regarded their presence as a nuisance and had frequently summoned the police to chase them away. In other words, their presence was a proper subject for police action and did not require or indeed permit the defendant's agents to take the law into their own hands by driving the boys away over whom they had no control.

Again in the case of Leonard v. Lee, 191 Md. 426, 62 A.2d 259, the Court of Appeals reviewed the Maryland law on the question of the liability of an owner or tenant of property abutting the public sidewalk and at page 430 of 191 Md., at page 261 of 62 A.2d reaffirmed the rules announced in the Flynn case:

> "As to the owner of the property, it seems to be well settled that the abutting owner is not liable to pedestrians for injuries resulting from his failure to keep in repair a public sidewalk which he had not constructed. (Citing cases.) Nor is he liable for a failure to keep the walk clear, even where a statute or ordinance requires that the pavement be kept free of snow and ice. The duty is owed to the authorities and not to the private individual who happens to slip."

Again in Citizens Savings Bank v. Covington, 174 Md. 633, 199 A. 849, the Court of Appeals reaffirmed the principle that a plaintiff may not recover damages for an injury occurring on the sidewalk in front of property of an abutting owner unless the plaintiff can show that the obstruction in the pavement was caused by the fault of the owner. In that particular case the facts were sufficient to show liability of the abutting owner because it had maintained a sidewalk entrance to its cellar in the pavement and it was his duty to maintain the entrance in a condition reasonably safe for pedestrians. The case is illustrative of other situations which may impose liability on the abutting owner where he makes a special use of the pavement for his own convenience as, for instance, maintaining an opening for the delivery of coal, and where the cover for the opening (usually and properly flush with the sidewalk) is left open or partially open with consequent injury to the pedestrian.

The facts of the present case very clearly distinguish it from those situations in which the proprietor of a business may be liable to his customers for lack of repair to the premises or its appurtenances over which he has control, or obstructions in the aisles or lanes within the store which have been negligently present and caused damage to an unsuspecting customer. Nor is the case within the purvue of such cases as have dealt with the liability of a business proprietor for damages to an invitee owing to defective construction or operation of a so-called "swinging door" as an entrance to or exit from the premises.

For these reasons I have concluded that the defendant's motion for a directed verdict in its favor must be and it is hereby granted this 10th day of February, 1955, and the clerk is accordingly instructed to enter judgment for the defendant with usual taxable court costs allowed to the defendant.